**Kate SCHWEIZER, on behalf of herself and all others similarly situated, Plaintiff–Appellant,**

v.

**TRANS UNION CORPORATION, Defendant–Appellee.**

No. 97–7542.

United States Court of Appeals, Second Circuit.

Jan. 26, 1998.

---

Scott N. Gelfand, New York City, for Plaintiff–Appellant.

Mark E. Kogan, Philadelphia, PA (Marion, Satzberg, Trichon & Kogan, P.C., of Counsel), for Defendant–Appellee.

Debra A. Valentine, General Counsel, Jay C. Shaffer, Deputy General Counsel, Ernest J. Isenstadt, Assistant General Counsel, Federal Trade Commission, Washington, DC, Amicus Curiae.

Before FEINBERG, KEARSE and WALKER, Circuit Judges.

FEINBERG, Circuit Judge:

Plaintiff Kate Schweizer appeals from an order of the United States District Court for the Southern District of New York, Charles L. Brieant, J., granting summary judgment to defendant Trans Union Corporation ("Trans Union") on Schweizer's claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.

Schweizer's claim is based on a collection notice that she received from Trans Union in July 1995 regarding a debt of $15 allegedly owed by Schweizer to Roche Biomedical Labs, Inc. Schweizer does not challenge the content of the letter. Rather, she alleges that the appearance of the letter, and of the envelope in which it arrived, simulated a telegram and thereby "created a false sense of urgency" and "misrepresented the importance, cost, purpose and urgency of the communication" in violation of 15 U.S.C. § 1692e.[1] Judge Brieant held that under the applicable law no reasonable juror could "find that the total effect of the document, including the envelope, was to create a false sense of urgency essentially by simulating a Telegram." We agree that there was no statutory violation here, and affirm.

## I. Background

### A. Facts

In July 1996, almost one year after receiving the collection letter, Schweizer filed this action in the district court. The complaint alleged that the letter, which had the word "Priority–Gram" in large print at the top, simulated a telegram. A copy of the letter was attached to the complaint. The complaint did not make any allegations with respect to the envelope enclosing the collection letter, nor was a copy of the envelope attached. In February 1997, Trans Union moved for summary judgment dismissing the complaint. Schweizer cross-moved for partial summary judgment on the issue of liability or, alternatively, for a continuance pending completion of discovery, and for a stay of Trans Union's motion "pending the Court's determination with respect to certification of the putative plaintiff class." At no time, however, did Schweizer move for class certification.

In her Counter–Statement of Facts Pursuant to Local Civil Rule 3(g), submitted in support of her motion for partial summary judgment, Schweizer supplemented and particularized her allegations with respect to the characteristics of the collection notice that simulated a telegram. Specifically, she pointed to the fact that the letter was written on white paper with a horizontal blue stripe at the top, and began with the legend " * * * IMPORTANT NOTICE * * *." She also noted that Trans Union's name "looks and

---

**1.** The statute provides in relevant part:

§ 1692e. False or misleading representations

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

. . .

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

sounds, not coincidentally, like 'WESTERN UNION,' the entity commonly known to deliver telegrams," and that "the letter concludes by suggesting that the balance sought could be paid by, *inter alia*, 'WESTERN UNION.'" Schweizer also made allegations regarding the envelope in which the letter had arrived, noting that it was also white with a horizontal blue stripe and bore the legend, "Priority–Gram," and that it said, "ELECTRONICALLY TRANSMITTED BY LASON SYSTEMS, INC. FOR PRIORITY POSTAL DELIVERY," even though the notice was sent and received by ordinary first class mail. Schweizer further stated that she believed the notice to be a "telegram-like communication." The envelope was not attached to Schweizer's motion papers, but a sample envelope was submitted by Trans Union in support of its motion for summary judgment.

The district judge granted Trans Union's motion for summary judgment and denied Schweizer's cross-motions. Applying the "least sophisticated consumer" standard, *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993), Judge Brieant held that the notice did not simulate a telegram or create a false sense of urgency, and therefore did not violate the statute. He also noted that, "[f]ew debtors today have ever received a telegram, and accordingly the telegram has lost whatever sense of urgency it may have been able to convey in the past." The judge saw support for his ruling in the Federal Trade Commission (FTC)'s Statements of General Policy or Interpretation Staff Commentary on the FDCPA. Specifically, Judge Brieant quoted comment 3 to § 1692f(8),[2] which states that use of "the word 'telegram' (or similar word) on the envelope" would not violate § 1692f(8). 53 Fed.Reg. 50098, 50108.

On appeal, Schweizer argues that Judge Brieant ignored relevant precedent in holding that the notice does not simulate a telegram, and that he erroneously relied on § 1692f(8) even though her claim is based on § 1692e. Schweizer also argues that summary judgment should not have been granted before the court made a determination on the issue of class certification.

### B. Amicus Brief

After the appeal was submitted by counsel, we requested and received a brief from the FTC, "setting forth its views on the issues raised by the appeal," and permitted the parties to comment thereon.

In its brief, the FTC finds nothing misleadingly urgent about the collection letter itself, which was the sole basis of the complaint. It argues, however, that a reasonable jury might find the *envelope* deceptive under the FDCPA to the least sophisticated debtor. The FTC points out that although the Priority–Gram does not resemble a yellow Western Union telegram, it does resemble a Western Union "Mailgram" or "Priority Mail" from the United States Postal Service. Both of these services cost more than normal first class mail and may thus "convey[ ] a false message about the manner in which they have been delivered, misrepresent the urgency of the subject communication, and thereby violate the FDCPA."

The FTC suggests that we should either (1) remand "to the district court for determination of the question of deceptiveness by the jury;" or (2) given "the trend of FDCPA jurisprudence to treat such issues as appropriate for summary judgment" affirm "narrowly, on grounds that do not condone the use ... of envelopes that may misrepresent the means by which, and cost at which, these envelopes have been sent."

### II. Discussion

#### A. Standard of Review

We review the district court's order granting summary judgment de novo. *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 710 (2d Cir.1991). The order can only be

---

**2.** Section 1692f forbids the use of "unfair or unconscionable means to collect or attempt to collect any debt," then lists examples of such conduct, including:

(8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

affirmed if we determine that there is no genuine issue of material fact to be tried, and Trans Union is entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

■ The district court properly applied the "least sophisticated consumer" standard in evaluating Schweizer's claim. *Russell v. Equifax A.R.S.,* 74 F.3d 30, 34 (2d Cir.1996). "The basic purpose of [this standard] is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Clomon v. Jackson,* 988 F.2d at 1318. "The FDCPA does not extend to every bizarre or idiosyncratic interpretation by a debtor of a creditor's notice. However, it does reach the reasonable interpretation of a notice by even the least sophisticated [debtor]." *Rosa v. Gaynor,* 784 F.Supp. 1, 3 (D.Conn.1989). With this standard in mind, we turn to Schweizer's claim.

## B. Simulating a Telegram

■ In support of her contention that Trans Union's collection notice simulated a telegram and violated the FDCPA, Schweizer relies primarily on *Trans World Accounts, Inc. v. F.T.C.,* 594 F.2d 212 (9th Cir.1979). In that case the Ninth Circuit affirmed, as being supported by substantial evidence, an FTC order issued under § 5 of the FTC Act, 15 U.S.C. § 45, a precursor to the FDCPA. The order enjoined Trans World from using a collection letter that looked like and was labelled a telegram, finding it "deceptive." It also enjoined use of a letter called a "Trans–O–Gram" because it simulated a Western Union Mailgram. Schweizer asserts that the Trans–O–Gram was very similar to the Priority–Gram she received from Trans Union and argues that we must therefore find the Priority–Gram deceptive.

The district court properly considered itself not bound by *Trans World,* a case from another circuit. In addition, *Trans World* involved a different standard of review under a different statute. The Ninth Circuit did not decide by a preponderance of the evidence that the Trans–O–Gram format was deceptive, as Schweizer would have us believe; it simply decided that the FTC's decision that Trans World had engaged in deceptive practices was supported by substantial evidence. 594 F.2d at 215–16.

Amicus FTC points out an even more telling distinction of *Trans World.* The collection letter enclosed in the Trans–O–Gram envelope threatened immediate legal action, but the only consequence of failure to pay was receipt of another form letter. Thus, in that case "the misleading format of Trans World's envelopes complemented and enhanced their misleading text combining to create the false impression" of urgency. In the appeal before us the letter's contents are not deceptive, nor does Schweizer allege violation of the FDCPA other than by simulation of a telegram.

Schweizer also cites two FDCPA cases: In re Scrimpsher, 17 B.R. 999 (Bankr.N.D.N.Y. 1982), and *Rosa v. Gaynor. Rosa* involved a collection letter threatening legal action that misrepresented that it had been personally sent by an attorney. The district court in *Rosa* found, among other things, that these letters created a false sense of urgency and were therefore deceptive, citing *Trans World* and *Scrimpsher.* 784 F.Supp. at 5.

In *Scrimpsher,* a bankruptcy court held that collection notices sent by regular mail with the headings, "SPEED–O–GRAM" and "Urgent Message" were "undisputed telegram simulations" and therefore deceptive under the FDCPA. 17 B.R. at 1012–13. The bankruptcy court's decision, which of course was not binding on Judge Brieant, also relied on *Trans World.*

■ Amicus FTC urges that deceptiveness is a factual determination for the jury (or the judge if jury trial is waived). That both parties moved for summary judgment on this issue has no impact on this argument. "Even though both parties ... agree that there are no issues of fact, the court may still find that factual issues exist." *Cargill, Inc. v. Charles Kowsky Resources, Inc.,* 949 F.2d 51, 55 (2d Cir.1991). The FTC concedes, however, that "courts have increasingly treated as questions of 'law,' various judgments about the way in which the 'least sophisticated consumer' would interpret particular debt collection claims." See e.g., *Rus-*

*sell v. Equifax A.R.S.,* 74 F.3d at 33; *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62–63 (2d Cir.1993). As already noted, the FTC therefore argues in the alternative that any affirmance of the district court's decision in this case should be narrow.

In this instance, we agree with the district court that the question of deceptiveness is appropriate for summary judgment. Like Judge Brieant, we are not convinced that even the least sophisticated debtor would mistake an ordinary sheet of paper, even with language like "Priority–Gram" and "Important Notice" printed on it, for a telegram.[3] We tend to agree with amicus FTC that the *envelope* is reminiscent of expensive (and for that reason perhaps urgent) forms of communication such as Priority Mail or a Mailgram. But we do agree with the FTC that on this record "any fleeting sense of urgency created by the envelope is not sustained in any way by the text of the collection letter itself." We are reinforced in this conclusion by the fact that Schweizer's complaint mentioned only the letter and not the envelope and challenges only the appearance and not the contents of the letter.

■ We need not decide at this time what language, either on the envelope or in the text of the letter, *would* create a false sense of urgency when received by the least sophisticated debtor.[4] We emphasize that we by no means approve of the envelope format used by Trans Union; a different letter sent in the same envelope might well violate the FDCPA. We also note that a piece of ordinary first class mail explicitly labelled a telegram (like the first letter in *Trans World*) would still clearly be deceptive under § 1692e. We simply agree with the district judge that the Priority–Gram received by Schweizer, taken as a whole, would not on

this record deceive even the least sophisticated debtor.

## C. The FTC Staff Commentary

■ Schweizer also challenges the district court's "reliance" on § 1692f(8) in rejecting her § 1692e claim. Since the staff commentary cited by Judge Brieant was not, in fact, central to his decision and in any event does not affect our holding in this case, we will address it only briefly.

After noting that no circuit court had addressed telegram simulations under the FDCPA, Judge Brieant looked for guidance to the Statements of General Policy or Interpretation Staff Commentary on the FDCPA published in the Federal Register by the FTC. The judge then noted that it "serve[d] to sustain and reinforce [his] opinion." We agree with Schweizer that the passage cited by the district court is not sound guidance for analyzing Schweizer's claims. The district court cited comment 3 to Section 808(8) of the FDCPA (15 U.S.C. § 1692f(8)) and an amendment to that comment specifically authorizing a debt collector to use the word "telegram" or something similar on an envelope. On the surface, this does appear to be strong support for the court's opinion. However, as Schweizer and amicus FTC point out, the purpose of § 1692f(8) is entirely different from that of § 1692e, and the FTC comment is not as helpful as it seems.

As set out above (see footnote 2, supra, and accompanying text), § 1692f(8) restricts the use of words or symbols on debt collection envelopes. The point of this restriction is "to protect the privacy of the debtors." *Johnson v. NCB Collection Servs.,* 799 F.Supp. 1298, 1305 (D.Conn.1992). Comment 3 to § 1692f(8), which is entitled "harm-

**3.** We reach this conclusion even though we disagree with the district judge's observation that telegrams have lost their power to convey a sense of urgency to even the least sophisticated debtor.

**4.** Amicus FTC points to the statement on the envelope, which reads "ELECTRONICALLY TRANSMITTED BY LASON SYSTEMS, INC. FOR PRIORITY POSTAL DELIVERY," as one which enhances the likelihood of consumer confusion. The FTC cites cases (on unrelated issues)

that describe Lason Services' methods. These apparently include neither electronic transmission to debtors or the post office nor the use of priority mail. See e.g., *Trull v. Lason Systems, Inc.,* 982 F.Supp. 600 (N.D.Ill.1997); *Laubach v. Arrow Service Bureau, Inc.,* 1997 WL 689451 (N.D.Ill.1997). Because Schweizer does not mention the envelope in her complaint, however, and because, like the FTC, we believe the letter dispels any sense of urgency the envelope might create, we do not explore this issue further.

less words and symbols," is properly taken to mean that words like "telegram" do not by themselves reveal that the content of a letter involves debt collection, and therefore do not endanger the privacy of the recipient. It does not follow from this, however, that including such words on a letter which is *not* a telegram would not be deceptive under § 1692e. The FTC confirms this reading of the two sections.

 Section 1692f(8) and the commentary thereon neither help nor hurt Schweizer's case, and since there is adequate other support for both the district court's ruling and our own, we need not address it further. To the extent, if any, that the district court's citation of § 1692f(8) may be called error, such error is harmless.

D. Summary Judgment Before Class Certification

Schweizer also argues that the district court should not have dismissed the case on the merits before acting on the question of certification of a plaintiff class. This argument is without merit.

Schweizer relies on *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), in which the Supreme Court held that it was inappropriate to make a preliminary assessment of the merits of a case in order to determine if it could be maintained as a class action. *Id.* at 177–78, 94 S.Ct. at 2152–53. *Eisen* makes clear that the determination of whether a class meets the requirements of Rule 23 must be performed separately from the determination of the merits, but it does not require that class certification be addressed first. "There is nothing in Rule 23 which precludes the court from examining the merits of plaintiff's claims on a proper Rule 12 motion to dismiss or Rule 56 motion for summary judgment simply because such a motion" precedes resolution of the issue of class certification. *Lorber v. Beebe,* 407 F.Supp. 279, 291 n. 11 (S.D.N.Y.1976). See also *Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 87 n. 1 (E.D.N.Y.1989). The decision to award summary judgment before acting on class certification was well within the discretion of the district court, particularly since Schweizer never moved to certify the purported class. See *Christensen v. Kiewit–Murdock Inv. Corp.,* 815 F.2d 206, 214 (2d Cir.1987).

We have carefully considered all of Schweizer's arguments, and find that none of them warrants reversal. The judgment of the district court is affirmed.