**Cynthia BAKER, Plaintiff,**

v.

**CITIBANK (SOUTH DAKOTA) N.A. et al., Defendants.**

**Civil No. 97–1107–R (RBB).**

United States District Court, S.D. California.

July 14, 1998.

M. David Meagher, Law Offices of Davis & Meagher, Solana Beach, CA, for Plaintiff.

Lawrence E. Duffy, Jr., Walsworth, Franklin, Bevins & McCall, Orange, CA, for Defendant Citibank.

Stephen H. Turner, Carlson, Messer & Turner L.L.P., Los Angeles, CA, for Defendant California Financial.

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; DENYING DEFENDANT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS; AND DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

RHOADES, District Judge.

## I. Overview

Plaintiff Cynthia Baker has filed a Motion for Partial Summary Judgment against Defendant California Financial Credit Association ("California Financial"). Defendant Citibank (South Dakota) N.A. ("Citibank") has filed a Motion for Partial Judgment on the Pleadings and a Motion for Partial Summary Judgment. For the reasons stated below, the Court grants Plaintiff's motion in part and denies it in part. The Court denies Citibank's motions.

## II. Background[1]

Plaintiff Cynthia Baker had a good credit history until an imposter began using her name and social security number to obtain credit. Plaintiff eventually learned of the imposter's activities and promptly notified credit reporting agencies.

Subsequently, the imposter applied for and received a credit card from Citibank in Plaintiff's name. The imposter charged thousands of dollars to the account, but did not pay the bills. Citibank then used the services of a collection agency to seek payment from Plaintiff. Plaintiff informed the collection agency that she had not incurred the charges; the imposter had. Accordingly, the collection agency returned the account to Citibank.

Citibank then used the services of California Financial, another collection agency, to seek payment from Plaintiff. California Financial tried to telephone Plaintiff on several occasions. However, California Financial repeatedly called the wrong telephone number.

In early June 1996, California Financial sent Plaintiff an undated letter that sought payment. The letter stated: "We have tried repeatedly to talk to you, but to no avail. . . . It is not a good idea to just ignore us." (Pl.'s Mot. for Summ.J.Ex. 1.)

On June 12, 1996, California Financial sent Plaintiff another letter. This letter stated:

> Since this account has already been to another agency, it is apparent that corresponding with you is useless. IMMEDIATELY REVIEW FOR LEGAL EFFORT NEXT. To avoid the trouble of litigation and to save legal and/or attorneys fees, PLEASE SEND THE BALANCE NOW OR CALL FOR ADDITIONAL TIME.

(*Id.* Ex. 2 at 2.) Plaintiff later explained to California Financial that she had not incurred the charges. Nevertheless, California

---

1. The Court takes the following statement of facts from the parties' briefs and the First Amended Complaint. The Court expresses no view on the accuracy of those facts.

Financial continued to seek payment from her.

Plaintiff then sued Citibank and California Financial.[2] Plaintiff alleges in her first cause of action that California Financial violated the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* Plaintiff claims in her fourth cause of action that Citibank violated the Robbins–Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), California Civil Code §§ 1788 – 1788.32. Plaintiff alleges in her second cause of action that Citibank violated the Song–Beverly Credit Card Act of 1971 ("SCCA"), California Civil Code §§ 1747—1748.7.

### III. Discussion

Plaintiff has filed a Motion for Partial Summary Judgment on her first cause of action. Citibank has filed a Motion for Partial Judgment on the Pleadings on the fourth cause of action. Citibank has also filed a Motion for Partial Summary Judgment on the fourth and second causes of action.

The Court will discuss each motion in turn.

### A. Plaintiff's Motion For Partial Summary Judgment
#### 1. Legal Standards Governing Summary Judgment

Under Federal Rule of Civil Procedure 56(c), the Court must grant summary judgment if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the Court examines all the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962).

In moving for summary judgment on an issue on which the movant bears the burden of proof at trial, the movant must make a strong showing.

> Rule 56(c) requires the moving party to show not only the absence of a disputed fact but also that [the moving party] is entitled to judgment as a matter of law.... Where the moving party has the burden ... [the] showing must be sufficient for the court to hold that no reasonable able trier of fact could find other than for the moving party.

*Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986) (emphasis removed); *see also Holeman v. Neils*, 803 F.Supp. 237, 241 (D.Ariz.1992).

The movant bears a much lighter burden, however, when moving for summary judgment on an issue on which the *non* movant bears the burden of proof at trial (e.g., where the defendant moves for summary judgment on the plaintiff's claims). In this situation, "the burden on the moving party may be discharged by ... pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir.1989) (en banc).

Once the moving party satisfies its initial burden, then the burden shifts to the nonmovant. The nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmovant may not "rest on mere allegations or denials of [the] pleadings." *Id.* at 259, 106 S.Ct. 2505. Rather, the nonmovant must go beyond the pleadings to designate specific facts showing that a genuine issue remains for trial. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. If the nonmovant fails to meet its burden after the moving party first meets its burden, the movant deserves judgment as a matter of law. *See id.*

#### 2. The Merits

The FDCPA seeks to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988) (internal quotation marks and citation omitted).

---

**2.** Plaintiff also sued other defendants that are not involved in the present motions.

Accordingly, the Act requires debt collectors to give debtors "debt validation notices." The debt validation notices tell debtors that they have the right to dispute their debts within thirty days of their initial contact with the debt collectors. *See* 15 U.S.C. § 1692g(a). Debt collectors also must tell debtors that if they dispute the debts, the debt collectors will obtain verifications of the debts before pursuing them further. *See id.*

In addition, the FDCPA prohibits debt collectors from making false or misleading statements. *See* 15 U.S.C. § 1692e. Among other things, the Act prohibits debt collectors from threatening legal action if they cannot legally take such action. *See* 15 U.S.C. § 1692e(5). Further, the FDCPA prohibits debt collectors from contacting debtors in certain circumstances. *See* 15 U.S.C. 1692c(c).

Plaintiff alleges that California Financial violated the FDCPA in three ways. First, she claims that California Financial did not adequately inform her of her right to dispute the debt within thirty days. Second, she claims that California Financial made various misleading statements. Third, she alleges that California Financial improperly contacted her.

### a. Whether California Financial Adequately Informed Plaintiff Of Her Right To Dispute The Debt

Plaintiff argues that California Financial did not adequately inform her of her right to dispute the debt within thirty days. The second letter that California Financial sent states: "To avoid the trouble of litigation and to save legal and/or attorneys fees, PLEASE SEND THE BALANCE NOW OR CALL FOR ADDITIONAL TIME." (Mot.Ex. 2 at 1.)

Directly underneath this language appears the message: "SEE OTHER SIDE FOR IMPORTANT MESSAGE." (*Id.*) This sentence appears in a slightly smaller typeface than the rest of the letter, but it appears in red ink and all capital letters.

The back of the letter contains a heading in a very large typeface that reads: "IMPORTANT MESSAGE." (*Id.* at 2.) Underneath this heading, in a typeface that seems to be the same size as the typeface on the front of the letter, appears the required debt validation notice that explicitly advises Plaintiff of her right to dispute the debt within thirty days. (*See id.*) This message also appears in all capital letters.

Plaintiff recognizes that the back of the letter explicitly advises her of her right to dispute the debt. Nevertheless, Plaintiff argues that the message on the front of the letter overshadows and contradicts the validation notice on the back of the letter. Thus, Plaintiff argues, California Financial did not adequately inform her of her right.

■■■ Whether language violates the FDCPA is a question of law for the Court to decide. *See Terran v. Kaplan,* 109 F.3d 1428, 1432–33 (9th Cir.1997). "[T]he impact of language alleged to violate [the FDCPA] is judged under the 'least sophisticated debtor' standard." *Swanson,* 869 F.2d at 1225 (quoting *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 778 (9th Cir.1982)). This standard is objective, but "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Terran,* 109 F.3d at 1432 (internal quotation marks and citation omitted).

> These principles lead to the conclusion that [t]he statute is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor. Furthermore, to be effective, the notice must not be overshadowed *or* contradicted by other messages....

*Swanson,* 869 F.2d at 1225 (emphasis added).

For this reason, courts have consistently found inadequate debt validation notices where the typefaces and layouts of the overall documents overshadowed the notices. *See United States v. National Fin. Servs., Inc.,* 98 F.3d 131, 139 (4th Cir.1996) (finding a notice inadequate where it appeared in small, grey ink on the back of a document but the front of the document demanded payment within ten days in "bold, commanding type"); *Russell v. Equifax,* 74 F.3d 30, 32 (2d Cir.1996) (finding a notice inadequate where it appeared on the back of a form in

unbolded letters, but the front of the form demanded payment within ten days, in all uppercase letters and selectively bolded type); *Miller v. Payco–General Am. Credits. Inc.*, 943 F.2d 482, 483 (4th Cir.1991) (finding a notice inadequate where it appeared in grey ink on the back of a form, but the front of the form requested immediate payment in large, bold, red and black letters); *Swanson,* 869 F.2d at 1225–26 (holding a notice inadequate where it was "placed at the very bottom of the form in small, ordinary face type, dwarfed by a bold faced, underlined message three times the size which dominate[d] the center of the page").

In the case at bar, however, the Court cannot hold that the format of the letter overshadows the notice that appears on the back of the letter. The validation notice appears in the same typeface as the request for payment. Moreover, the notice appears in all capital letters, unlike the paragraph that requests payment. In addition, the notice has a large heading that describes it as "important." If that were not enough, the front of the letter again describes the notice as "important" in all capital, red letters. The notice is not overshadowed by the letter's format.

Nevertheless, the front of the letter clearly contravenes the notice that appears on the back of the letter. The letter threatens Plaintiff with the "trouble of litigation" and "legal and/or attorney fees" unless she pays the debt "now" or requests additional time. This obviously dilutes the effect of the notice because it urges her to forgo her statutory right to dispute the debt. Courts have consistently held that such language violates the FDCPA. As the Ninth Circuit has explained:

> ... A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt ... within thirty days, or suffer the consequences. For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in [the FDCPA].

*Terran,* 109 F.3d at 1434; *see also National Fin. Servs.,* 98 F.3d at 139 (holding that conflicting time requirements violate the FDCPA); *Russell,* 74 F.3d at 34 (finding a violation of the notice requirement where the letter stated that "to take any course of action other than payment ... within ten days, ... would permanently affect [the debtor's] credit record"); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) (finding a "reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days"); *Miller,* 943 F.2d at 484 (holding that a letter was inconsistent with the notice requirement where it required the debtor either to dispute the debt by phoning "today" or pay "now"); *Swanson,* 869 F.2d at 1226 (holding that inadequate notice exists where "the substance of the language stands in threatening contradiction to the text of the ... notice").

Because the front of the letter, which demands immediate payment, contravenes the notice on the back of the letter and urged Plaintiff to forego her statutory rights or suffer the consequences, the letter violated the FDCPA's notice requirement. Accordingly, the Court grants summary judgment for Plaintiff on this issue.

### b. Whether California Financial Made False Statements

### i. The First Statement

Plaintiff also claims that the letter violated the FDCPA in a second way: Plaintiff claims that the threat of litigation was misleading because she had thirty days within which to dispute the debt, during which California Financial could not have sued her.

This argument conflicts with the Federal Trade Commission's ("FTC") interpretation of the FDCPA. The FTC has stated:

> A debt collector need not cease normal collection activities within the consumer's 30–day period to give notice of a dispute until he receives a notice from the consumer. An attorney debt collector *may take legal action within 30 days of sending the notice,* regardless of whether the consumer disputes the debt. *If the consumer dis-*

*putes the debt, the attorney may still take legal action* but must cease collection efforts. . . .

Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50109 (FTC 1988) (emphasis added). The Court must give deference to the FTC's interpretation. *See Saipan Stevedore Co. v. Director, Office of Workers' Compensation Programs,* 133 F.3d 717, 723 (9th Cir. 1998) (stating that courts must give "deference to agency interpretations [because of] the special competence of an administrative agency to interpret a statutory provision concerning its own area of expertise"). Plaintiff has not cited, nor has the Court's independent research revealed, any case holding the contrary, nor has Plaintiff provided the Court with any argument as to why it should not follow the FTC's interpretation.

Moreover, even if California Financial could not have taken legal action *after* Plaintiff disputed the debt, it could have taken such action during the thirty-day period, as long as it took the action *before* she disputed the debt. This is because the FDCPA only requires debt collectors to cease collection efforts *after* the debtors dispute their debts. *See* 15 U.S.C. § 1692g(b); *Rabideau v. Management Adjustment Bureau,* 805 F.Supp. 1086, 1094 (W.D.N.Y.1992) (holding that "efforts to collect the debt may occur within the thirty day period" unless the debt collector receives notice of a dispute).

Accordingly, California Financial could have sued Plaintiff during the thirty-day period. California Financial's statement was not misleading.

### ii. The Second Statement

■ Plaintiff next argues that California Financial misleadingly told her that she would have to pay its attorney's fees. Plaintiff bases her argument on the statement: "To avoid the trouble of litigation and to save legal and/or attorneys fees, PLEASE SEND THE BALANCE NOW. . . ." (Mot.Ex. 2 at 1.) Plaintiff argues that this statement is misleading because California Financial could not collect its attorney's fees from her.

The Court cannot hold that the least sophisticated debtor would construe this statement as a threat to charge Plaintiff with *California Financial's* attorney's fees. The letter neither states nor implies that Califor-

nia Financial would do so; the letter merely references attorney's fees generically. The letter most plausibly admonishes Plaintiff merely to avoid the notorious hassles and expenses of litigation. This statement was not misleading.

### iii. The Third Statement

■ Plaintiff next argues that California Financial misleadingly stated in its first letter: "We have tried repeatedly to talk to you, but to no avail. . . . It is not a good idea to just ignore us." (Mot.Ex.1.) Plaintiff also claims that California Financial misleadingly stated in its second letter: "Since this account has already been to another agency, it is apparent that corresponding with you is useless." (*Id.* Ex. 2 at 1.)

California Financial argues that these statements were true because it had tried to contact Plaintiff, but it had mistakenly directed its efforts to another person. The clear import of the quoted language, however, is that California Financial had made some sort of contact with Plaintiff (perhaps by leaving a message on her answering machine), but Plaintiff had "ignored" and rebuffed its attempts, rendering further correspondence "useless." Under the least sophisticated debtor standard, these statements were misleading. The Court therefore grants summary judgment for Plaintiff on this issue.

### c. Whether California Financial Improperly Contacted Plaintiff

■ Plaintiff next argues that California Financial improperly contacted her in violation of § 1692c. Section 1692c provides that "[i]f a consumer notifies a debt collector in writing that the consumer refuses to pay a debt . . ., the debt collector shall not communicate further with the consumer . . . except . . . to advise the consumer that the debt collector's further efforts are being terminated. . . ." 15 U.S.C. § 1692c. Plaintiff argues, and California Financial concedes, that it telephoned her on November 11, 1996—after she had told California Financial that she would not pay the debt.

To succeed on her motion, however, Plaintiff must establish that California Financial contacted her *improperly,* i.e., she must dem-

onstrate that it did not call merely to tell her that it would not pursue the debt. Plaintiff attempts to make this showing by referencing California Financial's record of Plaintiff's account. The account summary contains a notation entered prior to the phone call that states: "SEE WHAT U CAN DO ON THESE." (Mot.Ex. 4 at 2.) The account summary contains a notation entered on the day of the phone call that reads: "DEBTOR SEZ VERY UPSET CLAIMS FRUAD [sic]." (*Id.*) Shortly thereafter, the account summary states: "ALL LEADS EXHAUSTED." (*Id.*)

These notations suggest that California Financial called Plaintiff to try to collect the debt. California Financial has adduced contradictory evidence, however. California Financial has submitted the declaration of its president, Jay Levy. Mr. Levy states: "[T]he reference to the entry 'see what U can do on these' is a generic instruction.... [T]he instruction is simply a direction to resolve the account [by means that may include] closing the account and sending it back to the client." (Levy Decl. ¶ 5.) Thus, California Financial may have called Plaintiff merely to tell her that it would close the account.

Moreover, the reference to Plaintiff being upset could simply mean that Plaintiff seemed upset at the situation. It does not necessarily mean that California Financial upset her by trying to collect the debt from her again. Similarly, the reference to all leads being exhausted could simply reflect that, indeed, all leads were exhausted and the debt should not be pursued. The reference does not necessarily mean that California Financial unsuccessfully urged Plaintiff to pay the debt.

In short, material issues of disputed fact exist about the content of the phone call. The Court cannot resolve this issue at the summary judgment stage.

**3.** A motion for judgment on the pleadings is "functionally identical" to a motion to dismiss for failure to state a claim; the only significant difference is the time of filing. *Dworkin v. Hustler Magazine, Inc.,* 867 F.2d 1188, 1192 (9th Cir.1989). Accordingly, the same standards apply. *See id.*

## B. Citibank's Motion For Partial Judgment On The Pleadings

Citibank moves for Partial Judgment on the Pleadings on Plaintiff's fourth cause of action, which alleges a violation of the RFDCPA. Citibank argues that "a review of plaintiff's first amended complaint fails to disclose a single allegation which, even if true, constitutes a violation of the [R]FDCPA." (Mot. at 3.)

### 1. Legal Standards Governing Motions For Judgment On The Pleadings

The Court may grant judgment on the pleadings "when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *McGann v. Ernst & Young,* 102 F.3d 390, 392 (9th Cir. 1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1460, 137 L.Ed.2d 564 (1997).[3] The Court construes the complaint's allegations in the light most favorable to Plaintiff. *See NL Indus., Inc. v. Kaplan,* 792 F.2d 896, 898 (9th Cir.1986).

### 2. The Merits

The RFDCPA seeks to "prohibit debt collectors from engaging in unfair or deceptive acts or practices...." Cal.Civ.Code § 1788.1(b).[4] To this end, the RFDCPA prohibits specific activities. Citibank argues that Plaintiff has failed to allege that any of these activities occurred.

■ The Court cannot agree. Section 1788.13(h) prohibits debt collectors from making "false representation[s] that a legal proceeding has been, is about to be, or will be instituted unless payment of a consumer debt is made...." Plaintiff alleges that California Financial, acting as the agent of Citibank, "fraudulently, and without legal right to do so, contacted [Plaintiff] to ... demand payment of [the] debt by means of threats of legal action." (1st Am.Compl.¶ 17.) Obviously, this alleges a violation of § 1788.13(h).

**4.** The RFDCPA defines a "debt collector" as "any person who, in the ordinary course of business, regularly, on behalf of himself or herself or others, engages in debt collection." Cal.Civ. Code § 1788.2(c).

Moreover, § 1788.13(e) prohibits "[t]he false representation that the consumer debt may be increased by the addition of attorney's fees ... if, in fact, such fees or charges may not legally be added to the existing obligation." Plaintiff alleges that California Financial sent her a letter that stated: "To avoid the trouble of litigation and to save legal and/or attorneys fees, PLEASE SEND THE BALANCE NOW...." (1st Am. Compl. ¶ 14 & Ex. B.) *Read in the light most favorable to Plaintiff,* this assertion alleges a violation of § 1788.13(e).

In addition, § 1788.11(e) prohibits debt collectors from "[c]ommunicating[ ] by telephone ... with such frequency as to be unreasonable and to constitute an harassment to the debtor under the circumstances." Plaintiff alleges that California Financial, "acting as the agent for Defendant Citibank, continued to contact [Plaintiff] by telephone and through threats and demanded payment of the alleged debt for the purpose of harassing [Plaintiff] into paying a debt not rightfully hers." (1st Am.Compl.¶ 68.) This assertion also alleges a violation of the RFDCPA.

In sum, Plaintiff has made more than enough allegations to allege a violation of the RFDCPA. Accordingly, the Court denies Citibank's Motion for Partial Judgment on the Pleadings.

## C. Citibank's Motion For Partial Summary Judgment

Citibank also moves for summary judgment on Plaintiff's fourth and second causes of action. Citibank argues that it should prevail on the fourth cause of action because no evidence suggests that it violated the RFDCPA. Citibank argues that it should prevail on the second cause of action because the SCCA does not protect Plaintiff as a matter of law.

### 1. The Fourth Cause Of Action

The RFDCPA prohibits debt collectors from contacting debtors in certain circumstances. *See* Cal.Civ.Code § 1788.11. Citibank argues that no evidence suggests that it ever contacted Plaintiff.

The Court cannot agree. Citibank's own records indicate that it contacted Plaintiff at least three times. (*See* Meagher Decl. Ex. 2.) In addition, Plaintiff stated in a declaration that California Financial contacted her at the behest of Citibank. (*See* Baker Decl. ¶¶ 4–5, 7.) California Financial's records corroborate Plaintiff's declaration. (*See* Meagher Decl.Exs. 3–4.) Thus, evidence clearly suggests that Citibank contacted Plaintiff. Citibank's motion is denied with respect to the fourth cause of action.

### 2. The Second Cause Of Action

Plaintiff's second cause of action alleges that Citibank violated the SCCA by knowingly reporting false information about her to credit reporting agencies. *See* Cal. Civ.Code § 1747.70(a) (providing that "[n]o card issuer shall knowingly give any untrue credit information to any other person concerning a cardholder"); Cal.Civ.Code § 1747.70(d) (providing that a cardholder may sue for violations of the SCCA). Citibank defends by arguing that the SCCA only protects "cardholders," and Plaintiff is not a cardholder within the meaning of the statute.

Section 1747.02(d) defines a cardholder as "a natural person to whom a credit card is issued for consumer credit purposes...." Citibank argues that because it issued the card to the imposter instead of Plaintiff, Plaintiff was not a cardholder within the meaning of the statute.[5] Plaintiff responds by arguing that because Citibank issued the card in her name and under her social security number, she was a cardholder.

The parties have not cited, nor has the Court's independent research revealed, any California or federal case that has construed the meaning of "cardholder" in this context. One Michigan case, however, provides guidance by analogy.

In *Michigan v. Collins,* 158 Mich.App. 508, 405 N.W.2d 182 (1987), an imposter obtained a credit card in the name of Theresa Holland. A Michigan statute criminalized using a credit card without the consent of the cardholder. The statute defined a cardholder as "the person or organization who requests a credit

---

**5.** It is somewhat inelegant for Citibank to argue that Plaintiff was not a cardholder, in light of the fact that Citibank repeatedly tried to collect payment from her.

card and to whom ... a credit card is subsequently issued...." *Id.* 405 N.W.2d at 183 (quoting Mich.Comp.Laws. § 750.157m(b)).

The defendant argued that because Theresa Holland had not requested the credit card, she was not a cardholder within the meaning of the statute. The court rejected this argument, stating:

> ... In our opinion, defendant construes the statute far too narrowly. The statute is designed to protect ... the person in whose name a card is issued.... In the instant case, the credit card was issued pursuant to solicitation from one whom the issuer believed to be Theresa Holland. Construed in this manner, Holland was a cardholder. Construed narrowly, as defendant urges, the statute affords no protection to the real cardholder ... where persons representing themselves to be someone else request and receive a credit card. We do not believe that the Legislature intended to exclude from the act's operation fraudulent users who obtained unrequested cards....

*Id.* 405 N.W.2d at 184.

The Court finds this reasoning persuasive. Citibank's narrow interpretation boils down to the argument that if a consumer did not physically receive a card, the consumer is not a cardholder. Citibank's interpretation would remove the protections of the SCCA from an entire group of innocent consumers. This would be so even though the credit cards bear their names, use their social security numbers, and, if left unpaid, could damage their credit ratings. This is an odd interpretation indeed, and it circumvents the statute's obvious purpose of protecting consumers.

It is also contrary to the expressed intent of the California legislature. Section 1747.01 provides:

> It is the intent of the Legislature that the provisions of this title as to which there are similar provisions in the federal Truth in Lending Act, [15 U.S.C. § 1601 et seq.], essentially conform, and be interpreted by

anyone construing the provisions of this title to so conform, to the Truth in Lending Act....

The Truth in Lending Act, which contains a similar definition of "cardholder"[6] seeks "to protect credit card holders against losses due to ... fraudulent use of credit cards on the theory that the card issuer is in the better position to prevent such losses." *Minskoff v. American Express Travel Related Servs. Co.,* 98 F.3d 703, 708–09 (2d Cir. 1996). This purpose applies equally to people who risk devastation of their credit histories because of imposters; they are in equal, if not greater, need of protection than many other consumers. *Cf. American Airlines, Inc. v. Remis Indus., Inc.,* 494 F.2d 196, 197 (2d Cir.1974) (holding that because "the credit card abuses which Congress sought to eliminate plague all cardholders without meaningful distinction, [the Truth in Lending Act should not be interpreted] in a way that would sap the strength of the statutory safeguards it provide[s]").

Moreover, case law indicates that the Court should liberally construe the Truth in Lending Act in favor of consumers. *See Smith v. Fidelity Consumer Discount Co.,* 898 F.2d 896, 898 (3d Cir.1990); *Hubbard v. Fidelity Fed. Bank,* 824 F.Supp. 909, 916 (C.D.Cal.1993), *rev'd in part on other grounds,* 91 F.3d 75 (9th Cir.1996). This principle further indicates that the SCCA applies to people who have had cards issued in their names, even if they did not physically receive the cards. *Cf. American Airlines,* 494 F.2d at 197 (holding that courts should not "arbitrarily confin[e] the scope of the Truth in Lending Act[ ]" because doing so "would undermine Congress's purpose to afford a broader and more meaningful protection to all who enter the credit card domain").

■ For all the foregoing reasons, the Court holds that Plaintiff was a cardholder within the meaning of the SCCA. Accordingly, the Court denies Citibank's Motion for Partial Summary Judgment.[7]

---

**6.** 15 U.S.C. § 1602(m) defines a cardholder as "any person to whom a credit card is issued...."

**7.** Although Plaintiff stated in response to an interrogatory that she was not a Citibank cardhold-

er, her response does not compel the conclusion that she was not a cardholder within the meaning of the SCCA. That is a question of law for the Court to decide.

## IV. Conclusion

For the reasons stated above, the Court grants Plaintiff's Motion for Partial Summary Judgment in part and denies it in part. The Court denies Citibank's Motion for Partial Judgment on the Pleadings and its Motion for Partial Summary Judgment.

IT IS SO ORDERED: