**Dawn Marie ANDERSON, on behalf of herself and all other similarly situated, Plaintiff,**

v.

**CREDIT COLLECTION SERVICES, INC. Defendant.**

**No. 04–CV–0347W(RBB).**

United States District Court, S.D. California.

June 9, 2004.

Law Offices of Steven A Wickman, San Diego, CA, for Plaintiff.

Tim J. Vanden Heuvel, Lewis, D'Amato Brisbois and Bisgaard, San Diego, CA, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DENYING PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

WHELAN, District Judge.

Defendant Credit Collection Services ("Defendant" or "CCS") moves to dismiss Plaintiff Dawn Marie Anderson's ("Plaintiff's") Fair Debt Collection Practices Act ("FDCPA") Complaint. *See* Fed.R.Civ.P. 12(b)(6). Plaintiff has filed a cross-motion for summary judgment. *See* Fed.R.Civ. P.56. Both parties, through counsel, oppose the respective motions. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the reasons outlined below, the Court grants Defendant's motion to dismiss, and denies Plaintiff's cross-motion for summary judgment.

### I. BACKGROUND

On July 07, 2003 Defendant sent Plaintiff a debt collection letter seeking a $269.85 past due balance. The letter contained both Defendant's address and a Western Union logo and stated (caps in original):

IF CREDIT COLLECTION SERVICES CANNOT COLLECT YOUR DELINQUENT ACCOUNT, A REPORT WILL BE SENT TO YOUR CREDITOR STATING "VOLUNTARY COLLECTION DEEMED IMPOSSIBLE".

IN COMPLIANCE WITH FEDERAL LAW P.L. 95–109, 15 UNITED STATES CODE § 1692c(b):

"(b) WITHOUT THE PRIOR CONSENT OF A CONSUMER GIVEN DIRECTLY TO THE DEBT COLLECTOR, OR THE EXPRESS PERMISSION OF A COURT OF COMPETENT JURISDICTION, OR AS REASONABLY NECESSARY TO

EFFECTUATE A POSTJUDGMENT JUDICIAL REMEDY, A DEBT COLLECTOR MAY NOT COMMUNICATE IN CONNECTION WITH THE COLLECTION OF ANY DEBT, WITH ANY PERSON OTHER THAN THE CONSUMER, HIS ATTORNEY, A CONSUMER REPORTING AGENCY IF OTHERWISE PERMITTED BY LAW, THE CREDITOR, THE ATTORNEY OF THE CREDITOR, OR THE ATTORNEY OF THE DEBT COLLECTOR" (UNLESS PROHIBITED BY STATE LAW).

THIS OFFICE IS ONCE AGAIN ENCOURAGING YOU DIRECTLY TO CLEAR YOUR SERIOUSLY DELINQUENT OBLIGATION BY REMITTING FULL PAYMENT IN THE ENVELOPE PROVIDED, OR BY CONTACTING THIS OFFICE FOR ASSISTANCE.

THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. THIS COMMUNICATION WAS SENT BY A DEBT COLLECTOR.

On February 19, 2004 Plaintiff commenced this FDCPA lawsuit. Plaintiff contends the letter violates 15 U.S.C. § 1692 in two respects. First, Plaintiff argues that the letter's statutory reference ("The Paragraph") is false, deceptive and misleading, and harasses Plaintiff by falsely implying that legal action will soon commence.[1] Second, Plaintiff alleges that the Western Union logo simulates a telegram and implies a false sense of urgency. The parties' cross motions followed.

## II. LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the complaint's sufficiency. *See North*

*Star Int'l. v. Arizona Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir.1983). Dismissing a claim under this rule is appropriate only where it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Levine v. Diamanthuset, Inc.*, 950 F.2d 1478, 1482 (9th Cir.1991) (*quoting Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

A complaint may be dismissed as a matter of law for two reasons: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984); *Neitzke v. Williams*, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). In reviewing a Rule 12(b)(6) motion to dismiss, the court must assume all factual allegations as true, and must construe them in the light most favorable to the nonmoving party. *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir.2002). The complaint, and all reasonable inferences therefrom, must also be construed in plaintiff's favor. *Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.3d 1575, 1580 (9th Cir.1996).

 In the 9th Circuit, the court—and not the jury—determines whether a particular collection letter violates the FDCPA. *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225–26 (9th Cir.1988); *Terran v. Kaplan*, 109 F.3d 1428, 1432 (9th Cir.1997); *see also Baker v. Citibank (South Dakota), N.A.*, 13 F.Supp.2d 1037, 1041 (S.D.Cal.1998) (Rhoades, J.). The court examines the letter from the hypothetical "least sophisticated debtor" viewpoint ("LSD"), an objec-

---

1. Plaintiff claims that no action would be taken on a *de minimus* debt (*Pl.'s Compl. at* ¶ 9.)

tive standard applied as a matter of law. *See Swanson,* 869 F.2d at 1227 (holding that letter threatening investigation into employment should be reviewed by an objective least sophisticated debtor standard).[2]

## III. DISCUSSION

### A. THE FDCPA STATUTORY QUOTE

■ The narrow issue presently before this Court is whether Defendant's debt collection letter violates the FDCPA. Plaintiff contends that the collection letter is unlawful because it (1) falsely represents the debt's legal status and (2) unlawfully contains threats of unintended action. More specifically, Plaintiff argues that the statutory text's language, with words such as "postjudgment judicial remedy" and "attorney", violates 15 U.S.C. § 1692e because it causes a LSD to fear imminent legal action. In response, Defendant claims that the language is not threatening, and is included to notify the debtor that she should refer the matter to counsel if a bankruptcy or restructuring is occurring.

The Court agrees with Defendant.

The FDCPA prohibits debt collectors from falsely representing the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A). Additionally, debt collectors may not (1) use false or deceptive means to collect a debt, or (2) threaten to initiate legal action against a debtor unless the creditor actually intends to do so. 15 U.S.C. §§ 1692e(5), 1692e10; *see,*

*e.g., Carrigan v. Central Adjustment Bureau* 502 F.Supp. 468 (N.D.Ga.1980) (finding a FDCPA violation when a creditor threatens to transfer debtor's account "to an attorney" without any intention of actually filing suit); *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60 (2d Cir.1993) (creditor's false representation that it had "given the [debt collection agency] authority to initiate legal proceedings" violated FDCPA).

Here, dismissal is warranted for several reasons. First, Defendant's collection letter makes no overt threat of impending litigation. While Plaintiff may attempt to argue that verbatim statutory quotes constitute *per se* FDCPA violations, this argument is without merit. Indeed, federal law often *explicitly requires* that certain FDCPA provisions be included in certain collection letters.[3] Moreover, courts have commonly held that mere FDCPA quotation, without more, does not violate the statute. *See Renick v. Dun & Bradstreet Receivable Management Services,* 290 F.3d 1055 (9th Cir.2002); *Shapiro v. Dun & Bradstreet Receivable Management Services, Inc.,* 209 F.Supp.2d 330 (S.D.N.Y. 2002). In sum, Plaintiff has failed to point to any language contained in Defendant's collection letter that overtly threatens litigation.

Having failed to establish an explicit litigation threat, Plaintiff argues that the statute's "legal jargon" creates an implicit threat. This argument is equally uncompelling. While the quoted language does

---

**2.** Plaintiff alleges that this Court is a "poor prox[y]" for the LSD and urges the Court to present the matter to a jury. Plaintiff has previously advanced this same argument without success before other judges in this District; the Court declines the invitation to overrule those prior decisions. (*See Order Denying Motion for Reconsideration, Dunlap v. Credit Protection Association, L.P.* (S.D.Cal. August 13, 2003), No. 02–CV–2393 BTM (Moskowitz, J.)). Moreover, Plaintiff's addi-

tional reliance on a 7th Circuit unpublished slip opinion (*O'Chaney v. Shapiro Kreisman, LLC,* 2004 WL 635060 (N.D.Ill.2004)) is unpersuasive in the face of clear and contrary 9th Circuit precedent.

**3.** For example, initial letters must prominently display the provisions regarding consumers' 30 day debt validation rights. 15 U.S.C.A. § 1692g, subd. (a)

include legal terms, Plaintiff invites this Court to hold (without any statutory or decisional support) that an accurate and complete statutory citation potentially violates the FDCPA. Several considerations mandate that this Court decline Plaintiff's tenuous invitation.

Under Plaintiff's FDCPA interpretation, a collection letter that includes any legal term—regardless of its placement, context, or meaning—would constitute a *per se* FDCPA violation. This interpretation fails from both a legal and common sense standpoint. From a legal perspective, Plaintiff has failed to provide this Court with a single case where an "implied" threat of litigation was actionable under the FDCPA. From a common sense perspective, Plaintiff's purported rule would preclude the creditor or debt collector from providing any legal information to the debtor without potential FDCPA liability. Indeed, the language at issue here actually *benefits* the debtor; the statutory language simply states that a creditor cannot contact third parties regarding the debt without the debtor's permission.

Decisional authority clearly provides that a collection letter is not actionable under the FDCPA unless the creditor (a) threatens to initiate legal action the creditor does not intend to take, or (b) includes an ambiguous or misleading statutory citation that could threaten further legal action. This Court will not hold Defendant liable for what at best is a "bizarre or idiosyncratic" interpretation of the collection letter at issue here.[4] Plaintiff's cited, predominately unreported[5] cases do not hold otherwise. The common thread to each of Plaintiff's cited cases is that those letters (1) contained incomplete or ambiguous statutory citations, or (2) cited statutes to *support* the letter's additional, overtly threatening language.

For example, *Carroll* was an "overshadowing" case that reviewed an initial collection letter to determine whether the defendant's collection letter forced the debtor waive his 30–day validation notice by threatening immediate federal court action. *Carroll*, 2002 WL 31936511 at *6. Moreover, the *Carroll* letter clearly stated "[i]mmediate payment of this claim will forestall further disposition of the matter" but gave no explanation as to possible actions encompassed by the "ominous sounding phrase 'further disposition.'" *Id.* The letter ended with the bare phrase "[t]his statement is furnished in compliance with Federal Law 95–109 (15 United States Code 1601 et seq.)." *Id.*

*Carroll* is inapposite for several reasons. First, Defendant's letter here does not cryptically suggest that the debtor is subject to some unknown statute; it clearly indicates that the only applicable statute is contained within the letter and available for review. Second, the statute's entire text is included, allowing the LSD to read the full paragraph and understand the statute in context.[6] Third, the statutory paragraph is printed in the same font and same size as the surrounding text. Final-

---

4. *See e.g. Clomon*, 988 F.2d at 1320; *Schweizer*, 136 F.3d at 237

5. Plaintiff's cited authorities include *Carroll v. United Compucred Collections, Inc.*, 2002 WL 31936511, *Davis v. Commercial Check Control, Inc.*, 1999 WL 89556 (N.D.Ill.1999), *Sledge v. Sands* 182 F.R.D. 255 (N.D.Ill.1998), and *Pipiles v. Credit Bureau, Inc.*, 886 F.2d 22 (2d Cir.1989). The Court reminds Plaintiff that unreported authorities and 2nd Circuit opinions are not binding upon this Court. Unreported authorities from other districts are at best persuasive, and only to the extent that they are factually analogous. *See e.g. Herring v. Teradyne, Inc.*, 256 F.Supp.2d 1118 (S.D.Cal.2002) (Lorenz, J.).

6. Courts will generally presume that consumers read the letter carefully and in context. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993).

ly, the statute is one that explicitly *benefits* the debtor. In sum, *Carroll* does not apply to this case.

*Davis* is also distinguishable. In *Davis,* the debt collector's letter did not merely quote a statute, but rather cited a penal code to support the *explicit suggestion* of criminal wrongdoing and imminent legal action. *Davis,* 1999 WL 89556, at *1. It warned the debtor that his creditor believed he had "CRIMINAL INTENT TO ISSUE CHECKS WITH INSUFFICIENT FUNDS" (caps in original). *Id.* It suggested that legal action was imminent by explicitly encouraging the debtor to "CONTACT [HIS] ATTORNEY", suggesting that the matter has reached the point at which the debtor would require counsel. For reasons already addressed above, *Davis* does not apply to the present case.

Plaintiff next relies on *Sledge* to suggest that even true statements in a collection letter can mislead consumers and violate the FDCPA. Plaintiff's reliance is misplaced. In *Sledge,* the creditor's letter cited an IRS statute which stated that in certain circumstances, the IRS could consider a discharged debt income and obligate the debt collector to report the debt to the IRS. *Sledge,* 182 F.R.D. at 261. Because the statute only applied to a minuscule number of debtors, the court found the creditor's use deceptive and a violation of the FDCPA. *Id.* In contrast to *Sledge's* rarely applicable facial threat, the statute herein applies to all debtors and even *protects* debtors. There is simply no threatening language contained in the quoted text.

Finally, Plaintiff relies on *Pipiles* to suggest that "vague language in a debt collection letter which creates an implication that could lead the least sophisticated debtor to conclude that certain ramifications will occur constitutes a violation of the FDCPA." (*Pl.'s Opp. to Mot. to Dis-*

*miss at 8* ). Contrary to Plaintiff's suggestion, the disputed language in *Pipiles* was not vague. It read: (1) "Notice is hereby given that this item has already been referred for collection action" (2) "We will at any time after 48 hours take action as necessary and appropriate to secure payment in full", and (3) "Pay this amount now if action is to be stopped". *Pipiles,* 886 F.2d at 25. These threats stand in marked contrast to the strained implications that Plaintiff would have this Court find. *Pipiles'* statements were explicitly made by the *defendant,* and "the clear import of the language, taken as a whole, [was] that some type of legal action has already been or is about to be initiated and can be averted from running its course only by payment". *Id.* The Court finds no similar "threat" of legal action here.

In all of Plaintiff's "imminent legal threat" cases, the defendants used incomplete or misleading statutes to *support* the letters' other overt threats. Plaintiff has failed to cite even a single case where the bare text of a statute, without more, constituted a threat of imminent legal action. The Court agrees with Defendant that no threat is present. Further, Plaintiff's only supporting "deception" case (*Sledge* ) used language that was understandably misleading but markedly distinguishable. To the extent that Plaintiff's unreported cases can serve as persuasive authority, the Court declines to follow them.

The Court has reviewed Defendant's collection letter, and finds as a matter of law that the quoted statutory text neither misleads the LSD nor threatens imminent legal action. Accordingly, Plaintiff's FDCPA claim fails as a matter of law and immediate dismissal is warranted.

## B. THE WESTERN UNION LOGO

Plaintiff next contends that the Western Union logo contained in Defen-

dant's collection letter violates the FDCPA because it creates a false sense of urgency. Plaintiff notes that Western Union's reputation for quickly processing transactions is widely known such that Defendant's only purpose for including the logo was to deceive consumers into believing that the letter's contents were urgent.

Plaintiff is mistaken.

Neither case law nor the FTC's own commentary support Plaintiff's position. While it is true that courts have frowned upon letters which impermissibly simulate a telegram,[7] less flagrant uses have been upheld. The Second Circuit has ruled that even a letter stamped with "Important Notice" and "Priority–Gram" that concluded by suggesting payment via "Western Union" did *not* convey a "false sense of urgency" and would not deceive consumers. *Schweizer v. Trans Union Corporation*, 136 F.3d 233, 238 (2d Cir.1998). This decision was further supported by an amicus curie brief from the Federal Trade Commission itself. The court reasoned:

> "In this instance, we agree with the district court that the question of deceptiveness is appropriate for summary judgment. [W]e are not convinced that even the least sophisticated debtor would mistake an ordinary sheet of paper, even with language like "Priority–Gram" and "Important Notice" printed on it, for a telegram." *Id.* at 238.

Unlike *Trans World Accounts*, the letter herein was not printed on telegraph paper, did not use telegraph-type fonts, and was not labeled "Telegram." The instant letter was even less offensive than the compliant letter in *Schweizer*. While both contained the Western Union name, the letter herein lacked even the potentially confusing "Priority–Gram." The letter came on normal, letter-sized paper, and was printed in a standard font. It properly identified its origin (CCS), provided CCS's address and telephone number, and stated that the communication was sent by a debt collector trying to collect the debtor's delinquent account. The Court concludes that under these facts the Western Union logo, without more, was not deceptive and did not create a false sense of urgency.

Plaintiff suggests that a Western Union logo was sufficient to create a false sense of urgency in *Romine v. Diversified Collection Services*, 155 F.3d 1142 (9th Cir. 1998). This is incorrect. *Romine* involved very different facts and stands for a narrow holding that does not support Plaintiff's contention. First, the court ruled on only a single issue: whether Western Union's activities made it a "debt collector" subject to the FDCPA. *Id.* at 1143. Moreover, *Romine* did *not* hold that a naked Western Union logo created a sense of urgency. In *Romine*, Western Union sent an *actual telegram*, accompanied by a letter that instructed the recipient to "contact a Western Union operator" through the company's 800 number to retrieve the telegram. *Romine* involved a genuine telegram with all the importance, gravity, and exigency associated therewith. It was sent *by* Western Union, *stated* it was a telegram, and instructed the recipient to contact the telegram company *directly*. Consequently, the court realized that these telegrams could create urgency which catalyzed debt collection. In contrast, the letter here came from CCS, stated that it was a debt collection letter, and asked the consumer to contact CCS to resolve the problem.

---

7. For example, the 9th Circuit upheld a Federal Trade Commission ("FTC") administrative ban on yellow envelopes with the word "Telegram" in large black type on front and back. *Trans World Accounts, Inc. v. Federal Trade Commission*, 594 F.2d 212 (9th Cir. 1979).

*Romine* is consistent with *Trans World*; letters which bear all the hallmarks of a telegram can indeed be deceptive. In *Trans World*, the deception was a yellow envelope with the word "telegram", in *Romine* it was a notice *from* Western Union stating that the debtor had a telegram. But these rulings are predicated on creditors simulating or using an actual telegram, not including a particular company's logo. Plaintiff has provided this Court with no authority to suggest that a naked logo was sufficient to "simulate" a telegram, provided no reason why the recipient should confuse an explicitly labeled debt collection letter with a telegram, and offered no explanation why this Western Union logo is any more actionable than the compliant use of "Western Union" wording in *Schweizer*. The Western Union logo does not simulate a telegram, does not create a sense of urgency, and is consequently not actionable. Plaintiff's action fails as a matter of law.

## IV. CONCLUSION AND ORDER

In light of the foregoing, the Court **GRANTS** Defendant's motion to dismiss, and **DENIES** Plaintiff's cross motion for summary judgment as moot. (Doc. No. 5–1.) The Clerk of Court shall close the district file.

**IT IS SO ORDERED.**