## In re NIGERIA CHARTER FLIGHTS CONTRACT LITIGATION.

Nos. 04–MD–1613RJDMDG, 04–CV–304, 04–CV–473, 04–CV–605, 04–CV–791, 04–CV–1679, 04–CV–2270, 04–CV–2755, CV–2756, 04–CV–2757, 04–CV–4276, 05–CV–05200.

United States District Court, E.D. New York.

Feb. 1, 2006.

See, also, 2005 WL 2129159.

Brendan E. Zahner, John Patrick Doherty, Thacher Proffitt & Wood, LLP, Daniel Robert Lapinski, Squitieri & Fearon LLP, Ike Obinna Echeruo, Echeruo, Counsel, Attorneys at Law, LLP, John Edozie, Madu, Edozie & Madu PC, Lee Squitieri, Squitieri & Fearon, LLP, Maria J. Ciccia, New York, NY, O. Benjamin Okeke, Philip Akakwan, Brooklyn, NY, Jerome Lee, Hernan, Taylor & Lee, LLC, Roswell, GA, Osita Emmanuel Okocha, Astoria, NY, Ayotunde Okesanya, Partners, Attorneys & Counselors LLP, Babatunde A. Irukera, Olusola O. Oyeyemi, Chicago, IL, Oluwle O. Ofolabi, Orange, NJ, Donald O. Egbuchulam, Maplewood, NJ, Edmund Orok Edem, Staten Island, NY, for Plaintiffs.

Colleen Anne Denoto, Sedgwick, Detert, Moran & Arnold LLP, New York, NY, David M. Goldhaber, Sedgwick, Detert, Moran & Arnold LLP, Chicago, IL, Frank J. Costello, Malcolm L. Benge, Zuckert, Scoutt & Rasenberger, L.L.P., Washington, DC, Patrick J. Bonner, Freehill, Hogan & Mahar, New York, NY, C. Scott Greene, Curtis J. Romig, Powell, Goldstein, Frazer & Murphy, LLP, Atlanta, GA, Harold Turner Daniel, Jr., Tiffani Z. Moody, Holland & Knight, LLP, Atlanta, GA, Michael R. Turoff, Richard Keith Hellerman, Arnstein & Lehr, Chicago, IL, for Defendants.

## MEMORANDUM & ORDER

DEARIE, District Judge.

This case involves claims by purchasers of plane tickets for travel between the United States and Nigeria who were denied passage when defendant air carrier cancelled their flights without notice. Plaintiffs brought suit alleging damages resulting from the defendant's breach of contract, breach of treaty obligations, fraud, and negligence. Plaintiffs now seek certification of two classes: (1) a Nigerian passenger class, consisting of people stranded in the United States because they were unable to use the return portion of their ticket to Nigeria, and (2) a United States passenger class, consisting of people whom the defendant failed to transport from the United States to Nigeria and back as scheduled. For the reasons discussed below, the Court certifies a single class of individuals who purchased tickets prior to January 31, 2004, for travel between Nigeria and the United States, whom defendant failed to convey as scheduled due to its discontinuation of flight operations to and from Nigeria on or about December 28, 2003.

## PROCEDURAL HISTORY

This multidistrict litigation ("MDL") consists of five cases transferred from other districts by the Judicial Panel on Multidis-

trict Litigation[1] and seven actions commenced in this Court.[2] On March 31, 2004, Magistrate Judge Marilyn D. Go consolidated the actions then pending in this Court under the caption *In re World Airways Litigation*, Lead Case No. 04–CV–304. On May 11, 2004, Judge Go appointed Echeruo, Counsel, Attorneys at Law LLP and Thacher Proffitt & Wood LLP as lead plaintiffs' co-counsel. Lead co-counsel in the consolidated putative class action and plaintiffs in two of the cases transferred from other districts move for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure.[3] Defendant World Airways ("World") opposes class certification primarily on grounds that plaintiffs fail to meet the predominance requirement of Rule 23(b)(3).[4] World also contends that certification pursuant to Rules 23(b)(1) or (b)(2) is inappropriate, that one of the proposed classes does not satisfy Rule 23(a)'s numerosity requirement, and that, to the extent that a class may be certified, the class should be limited to persons purchasing tickets on or before December 31, 2003.[5]

1. The five cases transferred from other districts are: *Eboh v. World Airways, Inc.*, No. 04–CV–4276, transferred from the District of New Jersey (Newark); *Ayeni v. Ritetime Aviation & Travel Services, Inc.*, No. 04–CV–2755, from the Northern District of Georgia; *Ezejiofor v. World Airways Inc.*, No. 04–CV–2756, from the Southern District of New York; *Adeusi v. World Airways Inc.*, No. 04–CV–2757, from the Northern District of Illinois; and *Ezenweani v. World Airways Inc.*, No. 05–CV–05200, from the Southern District of Texas.

2. The actions filed in this Court are: *Anyoku v. World Airways, Inc.*, No. 04–CV–304; *Mba v. World Airways, Inc.*, No. 04–CV–473; *James v. World Airways, Inc.*, No. 04–CV–514; *Edem v. World Airways, Inc.*, No. 04–CV–605; *Inim v. World Airways, Inc.*, No. 04–CV–791; *Akakwam v. World Airways, Inc.*, No. 04–CV–1679; *Afolabi v. World Airways, Inc.*, No. 04–CV–2270. Plaintiffs in *James* stipulated to a dismissal of their claims against World on January 17, 2006, and are therefore excluded from the proposed class.

3. Plaintiffs in *Adeusi* and *Ayeni* moved for class certification prior to transfer.

4. Defendant Capitol Indemnity Corporation also opposes class certification. However, plaintiffs have reached a settlement with Capitol, subject to Court approval. *See* Ltr. From Thacher Proffitt to the Court (July 14, 2005). Accordingly Capitol's opposition will not be addressed here.

## BACKGROUND

In May 2003, World Airways, a U.S. air carrier certified by the Department of Transportation to provide charter services worldwide, began offering flights between the United States and Nigeria. World used Ritetime Aviation and Travel Services, Inc. ("Ritetime")[6] as its booking agent. Inim Second Amend. Compl. ¶¶ 17–20; Anyoku Amend. Compl. ¶¶ 26–28. Plaintiffs purchased tickets issued by Ritetime prior to January 31, 2004, for travel on World Airways flights between the United States and Lagos, Nigeria. Anyoku Amend. Compl. ¶¶ 1, 35. These tickets bore the name and corporate logo of World Airways and identified World as the carrier for the flights. *Id.* ¶ 36. Plaintiffs claim that the tickets constitute a valid and binding contract for air carriage between World and plaintiffs. *Id.* Plaintiffs argue that World breached this contract when it halted flights between the United States and Nigeria in late December 2003 without providing plaintiffs with notice, refunds, alternative flights,[7] or accommoda-

5. World argues that the actual ticket seller, Ritetime Aviation and Travel Services, Inc. ("Ritetime"), sold tickets for 2004 flights without World's agreement, and that the Public Charter Agreement between World and Ritetime only covered the period from May 2003 to December 31, 2003. World contends that plaintiffs have presented no evidence that Ritetime sold tickets after December 31, 2003. World acknowledges that "[t]his issue normally could be sorted out in the administration of the class," but states that in this case, "Ritetime and Obafemi were in possession of substantially more ticket stock than was used in the operation," and "[b]y opening the class to putative members who did not purchase their tickets in 2003, the court would be inviting even further fraudulent acts by Ritetime and Obafemi against World." Def.'s Mem. in Opp'n at 29. The Court notes that World Airways has not set forth any support for this claim and finds its arguments unavailing at this time.

6. Plaintiffs' motions for default judgment against Ritetime and Ritetime's owner Peter Obafemi were granted on January 28 and October 13, 2005, respectively.

7. World asserts that it did transport 318 passengers from Lagos to the United States on January 19, 2004, "despite the lack of any legal obligation to do so [and] at its own expense ...." Def.'s Mem. in Opp'n at 13 n. 17. World also claims to have paid for the transportation of twenty other

tions. *Id.* ¶¶ 36, 38. As a result of the cancelled flights, plaintiffs were either stranded in the United States or Lagos, Nigeria, after the first leg of their trip, or were refused travel altogether. *Id.* ¶ 2; Inim Second Amend. Compl. ¶ 2.

World counters that it flew every flight for which it had contracted, "except one December 28/29 flight cancelled by Ritetime." Def.'s Mem. in Opp'n at 5. World contends that, under the Public Charter Agreement, it contracted to provide airplanes to Ritetime for flights between the United States and Nigeria from May 2003 to December 31, 2003. *Id.* Ritetime "handled all passenger marketing, sales, and ticketing to the general public," while World supplied "the aircraft, crew, maintenance, insurance, and related handling services." *Id.* According to World, Ritetime failed to make timely payments to World and, at the beginning of December 2003, stopped payments entirely. *Id.* As a result, on December 15, 2003, World gave Ritetime notice that it would not extend the Agreement past December 31, 2003. *Id.* According to World, Ritetime "apparently sold tickets for U.S.-Nigeria flights to be operated in 2004" even though the "the Agreement was to expire by its terms on December 31, 2003" and World had not approved an extension of the charter program into 2004. *Id.* at 6.

### DISCUSSION

For a class to be certified, plaintiffs must first show that the class and its proposed representatives meet the numerosity, commonality, typicality, and adequacy prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure. Plaintiffs must then show that the class and its proposed representatives satisfy the requirements of at least one of the subsections of Rule 23(b). Plaintiffs seek certification under each of the three subsections: Rule 23(b)(1), (b)(2), and (b)(3). The Court, however, finds only subsection 23(b)(3) relevant to these actions. As a result, the Court must consider whether common questions of law or fact predominate over individual issues and whether "a class

action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

### A. Standard for Class Certification

When considering the propriety of a class action, Rule 23 "should be given a liberal rather than a restrictive interpretation." *Eisen v. Carlisle & Jacquelin (Eisen II)*, 391 F.2d 555, 563 (2d Cir.1968). Although the Court must conduct a "rigorous analysis" to determine whether plaintiffs have satisfied their burden, *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), " 'the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.' " *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 133 (2d Cir.2001) (quoting *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). Plaintiffs are only required to make "some showing" beyond the complaint in support of class certification. *DeMarco v. Robertson Stephens Inc.*, 228 F.R.D. 468, 470 (S.D.N.Y.2005) (citing *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 291–92 (2d Cir.1999); *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 134–35 (2d Cir.2001)). Because "the district court is often in the best position to assess the propriety of the class and has the ability ... to alter or modify the class, create subclasses, and decertify the class whenever warranted," the district court has substantial discretion as to whether to grant class certification. *In re Sumitomo Copper Litig.*, 262 F.3d 134, 139 (2d Cir.2001); *see also Green v. Wolf Corp.*, 406 F.2d 291, 298 (2d Cir.1968) ("[I]f there is to be an error made, let it be made in favor and not against the maintenance of the class action, for it is always subject to modification should later developments during the course of the trial so require.").

### B. Rule 23(a) Requirements

#### 1. *Numerosity*

■ Rule 23(a)(1) requires that the proposed class be "so numerous that joinder of

passengers from the United States to Lagos on other air carriers. Defendants do not dispute

World's assertions.

all members is impracticable." The Second Circuit has explained that "impracticable" does not mean "impossible," but rather, inconvenient or difficult. *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). A class of forty or more people is presumed to meet the numerosity requirement in the Second Circuit. *Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). Plaintiffs estimate that the proposed classes consist of between 3000 and 4000 people. Pls. Mem. at 12 n. 3. Lead co-counsel currently has retainer agreements with over 400 plaintiffs. *See* Ltr. from Thacher Proffitt to the Court (Nov. 14, 2005). World contends, however, that the *Anyoku/Inim* plaintiffs have failed to show how many plaintiffs fall in the Nigerian Passenger class as compared to the U.S. Passenger class, and that the two classes cannot be combined to meet the numerosity requirement. Def.'s Mem. in Opp'n at 27–28. Given the Court's decision to certify a single class, World's argument need not be considered. The Court finds that plaintiffs have satisfied the numerosity requirement because the single class will contain many more than forty members, thereby establishing a presumption of numerosity in this Circuit. *See Consol. Rail Corp.,* 47 F.3d at 483.

### 2. *Commonality, Typicality, and Adequacy*

■ World does not contest that plaintiffs satisfy the requirements of commonality, typicality, and adequacy under Rule 23(a).[8] Rule 23(a)(2) requires that "questions of law or fact common to the class" exist as a prerequisite to class certification. Plaintiffs allege that the relevant terms and conditions of the tickets of prospective class members and plaintiffs are identical, as are the issues relating to World's alleged failure to abide by its obligations. These allegations satisfy Rule 23(a)(2)'s commonality requirement. *See Robinson v. Metro–North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir.2001).

Plaintiffs have also sufficiently alleged that their claims are "typical" of·the class. Because each plaintiff purchased tickets from Ritetime for travel on World's flights and each plaintiff had a portion of their travel cancelled without notice, plaintiffs' claims "arise[ ] from the same course of events" and "each class member [must] make[ ] similar arguments to prove the defendant's liability." *Robinson,* 267 F.3d at 155 (internal quotations omitted).

Furthermore, plaintiffs have sufficiently pleaded that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). Representation is adequate under Rule 23(a)(4) if "(1) plaintiffs' counsel are competent to handle the case and (2) there are no conflicts of interest among class members." *Ingles v. City of New York,* No. 01 Civ. 8279, 2003 WL 402565, at *5, 2003 U.S. Dist. LEXIS 2453, at *16 (S.D.N.Y. Feb. 20, 2003) (citing *Baffa v. Donaldson, Lufkin & Jenrette Secs. Corp.,* 222 F.3d 52, 60 (2d Cir.2000); *Cromer Fin. Ltd. v. Berger,* 205 F.R.D. 113, 123 (S.D.N.Y. 2001)). Plaintiffs are represented by qualified and experienced counsel—Echeruo, Counsel, Attorneys at Law, LLP and Thacher Proffitt & Wood LLP—who were appointed co-lead counsel of the multidistrict litigation in November 2004. Furthermore, World has set forth no evidence that the interests of the representative plaintiffs in the putative class conflict with the interests of the class members. Accordingly the Court finds that plaintiffs have satisfied the requirements of Rule 23(a).

### C. Rule 23(b) Requirements

#### 1. *Rule 23(b)(1) and (b)(2)*

■ Having satisfied the prerequisite requirements of Rule 23(a), plaintiffs claim that certification is appropriate under Rule 23(b)(1), (2), or (3). Rule 23(b)(1)(A) allows certification of a class if "the prosecution of separate actions ... would create a risk of inconsistent or varying adjudications with re-

---

**8.** Although World initially asserted that "[p]laintiffs have not fulfilled even the less-stringent requirements of Rule 23(a)(2)," it dropped this argument on sur-reply. Def.'s Mem. in Opp'n at 14 n. 18. In its sur-reply, World stated that it

"object[ed] to class certification not on grounds of lack of commonality under Rule 23(a)(2) but on grounds of lack of predominance under Rule 23(b)(3)." Def.'s Sur–Reply at 5.

spect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Certification pursuant to this provision is appropriate where separate actions would prejudice the defendant(s). *See In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. 436, 453 (S.D.N.Y.2004). While " '[c]ourts are still struggling to develop guidelines governing the scope of Rule 23(b)(1)(A),' " *In re Simon II Litig.,* 407 F.3d 125, 133 n. 6 (2d Cir.2005) (quoting 2 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 4:4 (4th ed.2005)), examples of where Rule 23(b)(1)(A) certification would be appropriate include " 'where the [defendant] is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the [defendant] must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners).' " *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (quoting Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L.Rev. 356, 388 (1967) (citations omitted)).

In this case, a ruling in favor of some plaintiffs and not others would not prejudice the defendants, who could simply satisfy the judgments of the victorious plaintiffs without violating any obligation owed to the passengers who did not sue. Plaintiffs argue that a declaratory judgment stating World's legal obligations arising from the tickets would, if granted, "create a real risk that the defendants would be held to incompatible standards of conduct." Pls.' Mem. at 17. The Court disagrees. As plaintiffs seek only a declaration of legal liability for past acts, and as requiring a defendant to pay judgments in some case but not others "hardly call[s] for inconsistent conduct," Rule 23(b)(1)(A) certification is inappropriate in this case. *Cullen v. New York State Civil Serv. Comm.,* 435 F.Supp. 546, 562 (E.D.N.Y.1977).

■ While " 'Rule 23(b)(1)(A) considers possible prejudice to the defendants, ... 23(b)(1)(B) looks to possible prejudice to the putative class members.' " *In re Global Crossing Secs. & ERISA Litig.,* 225 F.R.D. at 453 (quoting *In re Ikon Office Solutions, Inc. Secs. Litig.,* 191 F.R.D. 457, 466 (E.D.Pa.2000)). Plaintiff's argument for 23(b)(1)(B) certification is premised on a "limited fund" theory—that a bond insuring the U.S.-embarking passengers' return travel is a limited fund from which the plaintiffs may recover. According to this theory, where putative class members' only source of legal recovery is a limited fund, 23(b)(1)(B) certification is appropriate because "[the] risk of adjudication with respect to individual members of the class ... would as a practical matter be dispositive of the interests of the other members not parties to the adjudications ...." Fed.R.Civ.P. 23(b)(1)(B); *see also Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 838, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999) (requiring as a prerequisite to limited-fund certification that "the totals of the aggregated liquidated claims and the fund available for satisfying them, set definitely at their maximums, demonstrate the inadequacy of the fund to pay all the claims"). Here, plaintiffs do not allege that the bond is the only source of recovery. Furthermore, the fact that the bonding company has already agreed to settle for the full amount of the bond, *see* Ltr. from Thacher Proffitt to the Court (July 14, 2005), and plaintiffs continue this suit suggests that damages from sources other than this "limited fund" are sought. Because the bond is not the sole source from which plaintiffs seek to recover, Rule 23(b)(1)(B) certification is clearly inappropriate.

■ Plaintiffs also seek certification pursuant to Rule 23(b)(2). This provision requires that the plaintiff be seeking "final injunctive relief or corresponding declaratory relief ...." Fed.R.Civ.P. 23(b)(2). While plaintiffs do seek a declaratory judgment along with money damages, "an action seeking a declaration concerning defendant's conduct that seems designed simply to lay the basis for a damage award rather than injunctive relief [does] not qualify under [this provision]." 7AA Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1775 (3d ed.2005). The provision " 'does not extend to cases in which the appropriate final relief relates exclusively

304

or predominately to money damages.'" *Parker v. Time Warner Entm't Co.*, 331 F.3d 13, 18 (2d Cir.2003) (quoting Fed.R.Civ.P. 23(b)(2) advisory committee's note). Plaintiffs in this case seek money damages and a declaratory judgment as to their contractual rights. As the requested judgment would merely declare rights establishing a basis for plaintiffs' money-damages claims, Rule 23(b)(2) certification is unavailable. *See Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir.2001) ("Insignificant or sham requests for injunctive relief should not provide cover for (b)(2) certification of claims that are brought essentially for monetary recovery.").

## 2. *Rule 23(b)(3)*

The real issue before the Court is whether to certify a class or classes under Rule 23(b)(3). In order to certify a class under this provision, a court must first find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members ...." Fed R. Civ. P. 23(b)(3). To satisfy the "predominance" requirement, "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, ... predominate over those issues that are subject only to individualized proof.'" *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir.2001) (quoting *Rutstein v. Avis Rent–A–Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir.2000)). The predominance inquiry should focus on the liability issue—"if the liability issue is common to the class, common questions are held to predominate over individual questions." *Dura–Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y.1981). The second requirement of Rule 23(b)(3) is "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." A court generally should not examine the merits of the case. in determining whether to certify a class pursuant to Rule 23.[9] *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974) ("[N]othing in either the language or history of Rule 23 ... gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.").

World first argues that common questions do not predominate over individual questions because each putative class member must individually establish privity with World. World "does not dispute that, at least so far as privity and Rule 23(b)(3) are concerned, a class may be certified against Ritetime." Def.'s Mem. in Opp'n at 16. World contends, however, that as it did not sell tickets directly to the putative class members, the members must individually establish that Ritetime was acting as World's agent. *Id.* Plaintiffs counter that World's arguments as to privity and agency improperly address the merits, and, in any event, are baseless given that "[p]laintiffs' claims do not rely on individualized representations, but rather [on] a uniform deceptive course of conduct by World Airways ... that was directed at all ticket purchasers." Pls.' Reply at 5. The Court agrees. Plaintiffs allege that "World Airways held Ritetime out as its agent in the course of its marketing to the general public" and that this may be proven by, among other evidence, "World Airways' press releases [and] website." *Id.* Because plaintiffs allege that proof common to each putative class member may be used to establish that Ritetime acted as World's agent, the issue will not be subject to individual determinations. *See In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136–38 (2d Cir.2001) (upholding the district court's predominance ruling because the elements of the plaintiffs' claims were subject to common

9. While the Second Circuit in *Heerwagen v. Clear Channel Communications*, 435 F.3d 219, 232 (2d Cir.2006), allowed some consideration of the merits at the class certification stage, it acknowledged that such consideration has been limited by the Supreme Court. *See Heerwagen*, 435 F.3d at 232 ("Some overlap with the ultimate review on the merits is an acceptable collateral consequence of the 'rigorous analysis' that courts must perform when determining whether Rule 23's requirements have been met, so long as it does not stem from a forbidden preliminary inquiry into the merits.") (citing *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); *Eisen*, 417 U.S. at 177, 94 S.Ct. 2140).

proof). Similarly, to the extent that the plaintiffs must establish reliance as an element of their claims, it would be reliance on representations made to the entire class. The commonality of the representations supports the Court's determination that common questions predominate over individual ones. *See In re Energy Sys. Equip. Leasing Secs. Litig.*, 642 F.Supp. 718, 752 (E.D.N.Y.1986) ("[T]he fact that questions as to certain specific class members' personal reliance on defendants' allegedly misleading materials and actions may ultimately have to be decided on an individual basis does not preclude certification of the proposed classes.").

█ World's second argument that common issues do not predominate over individual ones is that "each member of the class will have unique damages that will require individual scrutiny." Def.'s Mem. in Opp'n at 19. However, "[c]ommon issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Visa Check/MasterMoney Antitrust Lit.*, 280 F.3d at 139; *see also Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 566 (2d Cir.1968) (upholding class certification where "differences among the class members b[ore] only on the computation of damages"). "The predominance requirement calls only for predominance, not exclusivity, of common questions." *In re Visa Check/MasterMoney Antitrust Lit.*, 280 F.3d at 139. Were courts to consider the need for individualized damage determinations in determining predominance, few class actions would be maintainable under Rule 23.

█ World also argues that plaintiffs' state law claims and the damages determinations under the Montreal Convention require individualized choice of law analyses and that any "variations in state law affect predominance." Def.'s Mem. in Opp'n at 22. World cites to *In re Rezulin Products Liability Litigation* to support this assertion. *See id.* at 23 (citing 210 F.R.D. 61, 71 n. 59 (S.D.N.Y. 2002) (refusing certification in part because plaintiffs had not met their burden of analyzing state law variations among the claims)). However, World provides no examples of conflicts between the relevant state laws, and

most other district court cases from this circuit have declined to consider potential variation in state law among the plaintiffs' claims. *See Koppel v. 4987 Corp.*, 191 F.R.D. 360, 366 (S.D.N.Y.2000) ("On a motion for class certification, 'the court need not anticipate that variance may exist between the laws of the various states involved, nor hypothesize about what state law will be relevant.' ") (quoting *Somerville v. Major Exploration, Inc.*, 102 F.R.D. 500, 504–05 (S.D.N.Y.1984)); *In re Crazy Eddie Secs. Litig.*, 135 F.R.D. 39, 41 (E.D.N.Y.1991) (holding that "the application of laws of different states, if necessary, does not preclude class action certification"); *In re LILCO Secs. Litig.*, 111 F.R.D. 663, 670 (E.D.N.Y. 1986) ("[T]he spectre of having to apply different substantive law does not warrant refusing to certify a class on the common-law claims."); *Seidman v. Stauffer Chem. Corp.*, No. B–84–543, 1986 WL 9803, at *11, 1986 U.S. LEXIS 30264, at *34–35 (D.Conn. Jan. 17, 1986) (refusing to consider any choice of law issues on a class certification motion). Some of these cases make the point that there is often little variation between the basic common law of the states. *See e.g., Seidman*, No. B–84–543, 1986 WL 9803, at *11, 1986 U.S. LEXIS 30264, at *35 ("[I]f in fact, this Court were required to apply the law of other states, it is unclear whether there would exist substantial variations among states with regard to common law claims of fraud, deceit or negligent misrepresentations."). However, even if there were to be variation, the Court has the ability to adjudicate a class action litigation that could involve the application of numerous states' laws. As other courts have noted, even if "choice of law rules required a court to apply the law of all fifty states, this would not render the trial per se unmanageable" and "it is certainly possible to apply the laws of many states in a single class action." *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 79 (E.D.N.Y.2004) (holding that common questions of fact existed as to breach of contract claims since all putative class members signed substantively identical agreements) (citations and internal quotations omitted). Furthermore, even if a substantial variation in applicable state laws were to

arise, "the Court may employ subclasses or decertify those state law subclasses whose adjudication becomes unmanageable." *In re LILCO Secs. Litig.*, 111 F.R.D. at 670. For these reasons, the Court finds that the possibility that differences, much less conflicts, between relevant state laws might arise should not deter certification of a class.[10]

■ Finally, the Court is convinced that maintaining a class action is superior to other methods of adjudication. Under Rule 23(b)(3), four nonexclusive factors are pertinent to the superiority determination:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

Fed.R.Civ.P. 23(b)(3). As plaintiffs note, the prohibitive cost of proceeding individually against World and the likely unavailability of contingency-fee counsel far outweigh any interest the plaintiffs have in proceeding individually. Moreover, the considerable size of the proposed classes and the number of actions consolidated in this district makes class certification a superior method for fair and efficient adjudication of these actions. The difficulties of managing this class action—namely the individual damage determinations already discussed—are far outweighed by the common-sense efficiencies achieved in certifying this class.

## CONCLUSION

For the reasons discussed above, plaintiffs have demonstrated that their proposed class and its representatives satisfy the requirements of Federal Rule of Civil Procedure 23(a) and 23(b)(3). Accordingly, the Court certifies a single class consisting of individu-

als who purchased tickets prior to January 31, 2004 for travel between Lagos, Nigeria and the United States on World Airways who World failed to convey on its airplanes as scheduled due to World's discontinuation of flight operations to and from Nigeria on or about December 28, 2003. The Court appoints putative class action representatives Dr. Obiora Anyoku, Dr. Azuka Anyoku, Faith Adepoju, McLord Obioha, Uche Ukwuoma, Norman Nkwor, Mabel Inim, Florence Bolaji Shonaiya, and Julia Njoku as class representatives, and Echeruo, Counsel, Attorneys at Law LLP and Thacher Proffitt & Wood LLP as co-lead counsel for the class action. The Court certifies the claims for breach of the Warsaw and Montreal Conventions, breach of contract, fraud, and negligence set forth by plaintiffs in Thacher Proffitt's November 14, 2005, Letter to the Court specifying plaintiffs' claims for trial.

SO ORDERED.

---

10. While a comparison of the potentially relevant laws is not required in determining predominance, plaintiffs state that the contract law "of the thirteen jurisdictions identified by World as possibly supplying contract law here [is] funda-

mentally identical." Pls.' Reply at 8 (comparing the contract law of Indiana, Iowa, Massachusetts, New Jersey, Pennsylvania, Texas, Virginia, the District of Columbia, Georgia, Florida, New York, Maryland, and North Carolina).