Angela LEONE, on behalf of herself and all others similarly situated, Plaintiff,

v.

ASHWOOD FINANCIAL, INC., Defendant.

No. 06CV5684(ADS)(ETB).

United States District Court, E.D. New York.

March 16, 2009.

Adam J. Fishbein, Esq., Cederhurst, NY, for Plaintiff.

Congdon, Flaherty, O'Callaghan, Reid, Donlon, Travis & Fishlinger by Henry C. Dieudonne, Jr., Esq.; Lynne B. Prommersberger, Esq.; and Rona L. Platt, Esq., of Counsel, Uniondale, NY, for Defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

### I. BACKGROUND

The plaintiff, Angela Leone, filed this action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, on behalf of herself and approximately 117 putative class members against the defendant debt collection agency, Ashwood Financial, Inc. ("Ashwood"). The plaintiff contends that the defendant violated Sections 1692e(5) and (10) of the FDCPA by transmitting false and misleading information in connection with an attempt to collect a debt, as well as falsely threatening the plaintiff with legal action. It is undisputed that the defendant sent the plaintiff a collection letter dated June 22, 2006 demanding payment in the amount of $65.00, owing to Lenox Hill Pathology. The letter provided, in pertinent part:

Please be advised that your account has been assigned to Ashwood Financial. Unless arraignments can be made to pay this debt *we* may have no alternative than to turn this debt over to an attorney. This action may result in a civil suit being filed against you.

Letter to Angela Leone, June 22, 2006 (emphasis added).

Further, the plaintiff contends that although Ashwood hires attorneys to perform collection work for underlying creditors, the defendant is unable to show any previous

lawsuit for such a small amount and the cost of pursuing any legal action would clearly outweigh any possible recovery on the debt. Finally, the plaintiff contends that the 117 members of the proposed class who received the same letter owed similarly small amounts to Ashwood's clients.

In opposition, the defendant contends that it had no established policy by which it determined which collection matters to pursue through civil litigation. It contends that in some cases, the balance is relevant, while in others it is not. Further, although the defendant apparently conceded that it had a practice of not instituting suits to collect debts under a certain amount, it may have changed that practice in Leone's case for valid reasons, including to set a precedent that it would pursue litigation in certain actions. In fact, the defendant maintains that at the time it sent the June 22, 2006 letter, it was considering a full range of options. Accordingly, the defendant contends, that Leone cannot adduce evidence in support of her claim that its June 22, 2006 letter contained a threat that Ashwood did not intend to pursue.

Presently before the Court are the parties' cross-motions for summary judgment as well as the plaintiff's motion for class certification.

## II. DISCUSSION

### A. The Parties' Cross-motions for Summary Judgment

#### 1. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

FED.R.CIV.P. 56(c).

So that a motion for summary judgment should be granted only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party bears the burden of establishing the absence of a genuine issue of material fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the moving party has offered evidence that no genuine issue of material fact remains, the burden shifts to the non-moving party to provide evidence that a genuine, triable issue remains. Id. at 250, 106 S.Ct. 2505. It is well-settled that the non-moving party cannot defeat summary judgment with nothing more than unsupported assertions or the allegations in its pleadings. FED.R.CIV.P. 56(e); Cifarelli v. Vill. of Babylon, 93 F.3d 47, 51 (2d Cir.1996); Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir.1995).

In deciding a motion for summary judgment, the Court must view all of the evidence in the light most favorable to the non-moving party and must draw all permissible inferences from the submitted affidavits, exhibits, interrogatory answers, and depositions in favor of that party. See Anderson, 477 U.S. at 255, 106 S.Ct. 2505, 91 L.Ed.2d 202; Vann v. City of N.Y., 72 F.3d 1040, 1048–49 (2d Cir. 1995). Notably, "the trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." Gallo v. Prudential Residential Servs. Ltd., 22 F.3d 1219, 1224 (2d Cir.1994); see Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir.1987) (holding that on a motion for summary judgment, the court "cannot try issues of fact; it can only determine whether there are issues to be tried").

The plaintiff contends that because the defendant failed to attach a Rule 56.1 statement to its own motion and failed to file a proper counter-statement to the plaintiff's statement of facts, the facts set forth in her Rule 56.1 statement must be deemed admitted. Indeed, Local Civil Rule 56.1(c) provides that "[e]ach numbered paragraph in

*the statement of* material facts ... will be deemed to be admitted for purposes of the motion unless *specifically* controverted by *a correspondingly numbered paragraph in* the statement required to be served by the opposing party."

The Second Circuit has made clear that "while a court is not required to consider what the parties fail to point out in their Local Rule 56.1 statements, it may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir.2001) (internal quotations and citations omitted). In addition, the opposing party's failure to comply with Local Rule 56.1 "does not absolve the party seeking summary judgment of [the] burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 Statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York,* 322 F.3d 139, 140 (2d Cir.2003) (quoting *Holtz,* 258 F.3d at 74). Accordingly, " '[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented.' " *Holtz,* 258 F.3d at 74 n. 1 (quoting Fed.R.Civ.P. 56(e), Advisory Committee Note to 1963 Amendment).

## 2. The FDCPA

■ The purpose of the FDCPA is to protect consumers from abusive, harassing, threatening, misleading and otherwise unscrupulous debt collection practices. *See Russell v. Equifax A.R.S.,* 74 F.3d 30, 33 (2d Cir.1996). The statute "was designed to protect consumers from unscrupulous collectors whether or not there is a valid debt." *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir.1982); *see also Fedotov v. Peter T. Roach and Associates, P.C.,* 354 F.Supp.2d 471, 477 (S.D.N.Y.2005). Further, non-compliance with the regulations will subject the debt collector to liability. Section 1692k(a) provides that: "[e]xcept as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter

with respect to any person is liable to such person...."

■ The FDCPA is a strict liability statute. *See Russell,* 74 F.3d at 33; *In re Risk Management Alternatives, Inc.,* 208 F.R.D. 493, 500 (S.D.N.Y.2002). A debt collector violates the Act by failing to provide the information it requires, *see DeSantis,* 269 F.3d at 161, and "a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell,* 74 F.3d at 33.

Importantly, in determining whether a debt collector violated the Act, courts use "an objective standard, measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." *Russell,* 74 F.3d at 34; *see Savino v. Computer Credit, Inc.,* 164 F.3d 81, 85 (2d Cir.1998). The Second Circuit has indicated that because the least sophisticated consumer standard is objective, a determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law. *Berger v. Suburban Credit Corp.,* No. 04CV4006, 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006) (citing *Schweizer v. Trans. Union Corp.,* 136 F.3d 233, 237–38 (2d Cir.1998)). This remains true even where, as here, the plaintiff has past experience with the FDCPA.

Section 1692e is violated when a debt collector uses "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22, 24 (2d Cir.1989). Section 1692e and, specifically, sections 1692e(5) and (10) provide that:

> [T]he following conduct is a violation of this section:
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken....
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

15 U.S.C. § 1692e. "[T]he analysis of § 1692e(10) is somewhat duplicative because a section 1692e(10) violation frequently accompanies the violation of a more specific

1692e provision." *Mizrahi v. Network Recovery Services, Inc.*, No. 98CV4528, 1999 WL 33127737, at *8 (E.D.N.Y. Nov. 5, 1999) (internal quotations and citations omitted)

Seemingly small factual differences are often outcome determinative in liability assessments under Section 1692e(5). For example, courts have drawn distinctions where collection letters are sent from attorneys rather than debt collectors. *Baptist v. Global Holding and Inv. Co., L.L.C.*, No. 04CV2365, 2007 WL 1989450, at *4 (E.D.N.Y. July 9, 2007). In addition, courts have looked to whether letters threaten imminent legal action rather than potential legal action at some future time. *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir.1993) (letter stating that debt collection agency was authorized to commence legal proceedings "implied that the commencement of legal proceedings was imminent"); *Wiener v. Bloomfield*, 901 F.Supp. 771, 775–76 (S.D.N.Y.1995) (granting summary judgment in favor of the plaintiff where debt collector sent copies of summons and complaint to the debtor, implying papers had been or were about to be filed in court unless the debtor responded by the deadline).

Finally and notably, courts have denied recovery where letters are merely statements of the creditor's rights, rather than pronouncements that the collection agent can and will institute legal action on its own initiative. *Madonna v. Academy Collection Serv.*, No. 95CV00875, 1997 WL 530101, at *6–7 (D.Conn. Aug. 12, 1997) (finding that the statement: "failure to comply may result in our informing our client that you have refused to cooperate, and they may pursue legal action," was not a threat to pursue legal action by the debt collector); *Knowles v. Credit Bureau of Rochester*, No. 91–CV–14S, 1992 WL 131107, at *1 (W.D.N.Y. May 28, 1992) (finding that "failure to pay will leave our client no choice but to consider legal action," "threatens no action whatsoever").

■ With this background in mind, in determining whether a statement constitutes an actual threat of legal action, the Court will consider: (1) "whether the threat to bring suit to collect the debt is one made by the debt collector himself, or whether the language merely suggests that the debt collector's client may consider pursuing legal action in the event of nonpayment;" (2) "whether the language in the letters explicitly threatens that legal action will be taken, or whether it simply describes available alternatives which include possible legal action;" and (3) the defendant's ability and intent to carry out the threatened conduct. *See Berger*, 2006 WL 2570915, at *4–6; *see also Jackson v. Immediate Credit Recovery, Inc.*, No. 05CV5697, 2006 WL 3453180, at *6 (E.D.N.Y. Nov. 28, 2006) ("Factors courts consider include whether the threat is made by the debt collector itself . . .; whether the letter specifically states legal action will be taken or merely describes available alternatives including possible legal action; whether the debt collector is authorized by its client to take legal action; and whether the debt collector likely intended to, and was capable of, carrying out its threatened action.").

### a. As to whether the June 22, 2006 letter threatens an action that cannot legally be taken

■ By its June 22, 2006 letter, the defendant went far beyond merely advising Leone of the rights of the creditor. Instead, it is clear from the language of the letter that the defendant made an explicit threat to institute litigation on its own account if the plaintiff failed to remit payment. *Cf. Madonna*, 1997 WL 530101, at *7, *9 (finding that letter stating that "our client may choose to pursue legal action," did not suggest that legal action would be taken, but only referred to the remedies available to the creditor if such action were pursued); *Knowles*, 1992 WL 131107, at *2 (finding no violation where "the notice [merely] informed plaintiff that the creditor will have to consider legal action if payment is not made."); *Riveria v. MAB Collections, Inc.*, 682 F.Supp. 174, 178 (1988) (no violation stemming from letter stating that "You leave us no choice but to advise your creditor that you have ignored our efforts, and that legal action may be necessary in order to collect this bil (sic)").

The defendant's letter here implied a present ability by the debt collector itself to move forward with litigation, stating that "*we* may

have no alternative than to turn this debt over to an attorney.... This action may result in a civil suit being filed against you." However, at his deposition, Dan Bailey, the president of Ashwood revealed that "if we got to the point where we decided the attorney would sue, then we would request an assignment from the particular client," (Bailey Dep. 12:22–25), and "[o]ur attorney would suggest to us which accounts would be appropriate to sue. We would contact the appropriate creditor in writing. If they wanted to sue those accounts, we would send that documentation to the attorney," (Bailey Dep. 13:24–14:3). The defendant concedes that no written assignments were made from October 19, 2005 to October 19, 2006 with respect to any of the 117 debtors receiving defendant's letter. (Def's. discovery response to Adam J. Fishbein, Aug. 22, 2008). Accordingly, the record shows that Ashwood needed additional approval or authorization from the client creditor before commencing civil actions against any of the 117 persons allegedly receiving the letter at issue.

In *Bentley*, 6 F.3d 60, the defendant collection agent sent the plaintiff a letter stating that "Your creditor is now taking the necessary steps to recover the outstanding amount of $483.43. They have instructed us to proceed with whatever legal means is necessary to enforce collection." *Bentley*, 6 F.3d at 61. The Second Circuit found these statements to be misleading because they implied that the creditor had authorized the debt collector to initiate legal proceedings against the debtor when in fact, the creditor gave no such authorization. *Id.* at 62. Further, the Court found that the notice suggested the commencement of a lawsuit was imminent when, in fact, this was not the case. *Id.*

Further, in *Berger*, 2006 WL 2570915, the Court determined that the defendant's threat that "*we* shall take whatever steps necessary to pursue collection" violated the FDCPA because the record was devoid of evidence tending to establish that the defendant was in fact authorized by its client to take "whatever steps necessary" to collect the unpaid debt. *Berger*, 2006 WL 2570915, at *7 (noting that "there has been no evidence presented as to the terms of the contract between defendant and its creditor which would demonstrate whether defendant was authorized to commence legal action or had ever used litigation to collect a debt of this size").

Finally, in *Herbert v. Monterey Financial Services, Inc.*, 863 F.Supp. 76, 80 (D.Conn. 1994), the court found that the defendant's threat to use "the remedies available under the ... State laws" and request for "settlement prior to possible legal action" violated the FDCPA because the least sophisticated consumer would understand that the collector threatening such action had authority to make a decision concerning legal action, when in fact the authority still resided with the creditor. *Cf. Prewitt v. Wolpoff & Abramson, LLP*, No. 05CV725, 2007 WL 841778, at *3–4 (W.D.N.Y. March 19, 2007) (finding no false threat where the defendant advised the plaintiff that its attorneys would review his file for "further action" and the defendant had blanket authority to commence suit).

█ "A collection notice is deceptive for the purposes of the FDCPA if it is 'reasonably susceptible to an inaccurate reading....'" *Berger*, 2006 WL 2570915, at *3 (quoting *Russell*, 74 F.3d at 35). Viewed from the prospective of the least sophisticated consumer, Ashwood's letter conveys a message that defendant had present authority to commence an action, when, in fact, it did not. *See Rosa v. Gaynor*, 784 F.Supp. 1, 4–5 (D.Conn.1989) (finding that the phrase "we may be forced" created the false impression that the defendant could and would file suit immediately). Accordingly, the Court finds that the letter threatened to take an action, which, at the time the threat was made, could not legally be taken and created the impression that legal action was more imminent than it actually was. Moreover, the defendant's letter is misleading for the additional fact that it represents that the debts were "assigned to Ashwood Financial," when, apparently, no written assignments had been made. Therefore, the plaintiff is entitled to summary judgment on this ground.

b. *As to whether the June 22, 2006 letter threatens an action that is not intended to be taken*

The plaintiff contends that the defendant threatened to initiate suit when in never intended to do so in violation of Section 1692e(5). The Court disagrees.

The plaintiff argues that the defendant had no history of filing actions to collect small debts, and because the record shows that the defendant paid its attorney, David Gold, costs of $175 or $350 to file a suit, depending on the size of the debt, it would have been impractical to file suit to recover the small amounts owed by the plaintiff and others similarly situated. In addition, the plaintiff relies on attorney Gold's February 24, 2005 statement to the court in the matter of *Spira v. Ashwood*, 04cv4607, to the effect that "Although my office doesn't normally and routinely handle $50 claims for litigation, it is not unlikely that my client would at least send it to my office perhaps for some initial letter series for some legal action in that respect, not necessarily litigation." Finally, the plaintiff points to Bailey's testimony that he did not recall suit being filed on behalf of any of the creditors represented by the 117 debtors.

■ "In order to establish a violation of 15 U.S.C. § 1692e(5) because of the indication in the communication complained of that non-payment might lead to suit, plaintiff would have to show that a lawsuit—[which is] a routine debt collection device where negotiations fail-could be ruled out." *Sluys v. Hand*, 831 F.Supp. 321, 327 (S.D.N.Y.1993). This may be established, for example, where "a creditor had a fixed practice of not bringing suits against customers in order to promote good will, or had advertised an unlimited satisfaction guarantee inconsistent with such lawsuits." *Id.*

Importantly, the plaintiff bears the burden of proving that the defendant never intended to carry out the threatened action. *See Laster v. Cole*, No. 99CV2837, 2000 WL 306848, at *5 (E.D.N.Y. March 20, 2000). For the following reasons, the Court finds that the plaintiff has failed to sustain that burden.

First, the relatively small value of a debt does not, on its own, establish that the defendant did not intend to pursue collection litigation. In *Unger v. National Revenue Group, Ltd.*, No. 99CV3087, 2000 WL 1897346, at *5 (E.D.N.Y. Dec. 8, 2000), the court denied the plaintiff's motion for summary judgment under Section 1692e(5), stating that "[w]hile it is undisputed that no lawsuits have thus far been brought for debts under $300, it does not follow, as a matter of law, that defendants would not have brought a lawsuit in this case."

Further, Bailey testified that Ashwood had no specific policy with respect to what dollar amounts would result in referrals to attorneys for litigation. (Bailey Dep. 23:22–24:4, 25:5–9) ("We send accounts to Gold's office.... If they determine a suit is worthy, then they would make the recommendation to us. In some cases, balance is relevant. In some cases, it is not."). *See Baptist*, 2007 WL 1989450, at *6 (finding that the small value of the debt did not establish that the defendants would not bring suit in a particular case, even if it is was not defendants' regular policy to bring such suits); *see also Madonna*, 1997 WL 530101, at *7 (finding plaintiff failed to prove lack of intent where defendant had "no rigid standard for deciding when to seek suit authorization and has sought such authorization for accounts with amount less than that owed by plaintiff.").

Based on the record presented, the Court would be disinclined to hold, as a matter of law, that the defendant had no intention to bring suit against any of the 117 recipients of the letter in question merely because the amounts owed were relatively small. "[I]t is enough to say that a lawsuit was indeed always a viable alternative in the circumstances presented by plaintiff's unpaid account, even if not necessarily a likely one." *Madonna*, 1997 WL 530101, at *9; *see also Spira v. Ashwood*, 371 F.Supp.2d 232, 237 ("[T]hat defendant may ultimately choose not to initiate litigation does not render the language in the [letter] 'deceptive,' 'misleading' or 'false.' "). Accordingly, summary judgment on this ground is denied.

However, the plaintiff need only establish one FDCPA violation to prevail. *See* 15

U.S.C. § 1692k. As discussed above, the violation here stems from the defendant's assertion of authority to move forward with legal action where no such authority existed. In this regard, whether the defendant intended to move forward with collection litigation in those matters is not relevant to the Court's finding of liability against Ashwood under Sections 1692e(5) and (10) of the FDCPA.

## B. The plaintiff's motion for class certification

Prior to summary judgment motion practice in this case, the plaintiff filed a motion to certify a class pursuant to Fed.R.Civ.P. 23. The defendant has not opposed the certification motion. Further, the decision to award summary judgment before acting on class certification is within the court's discretion. *Schweizer v. Trans Union Corp.,* 136 F.3d 233, 239 (2d Cir.1998).

In determining whether a putative class qualified for certification, the only question is whether the requirements of Federal Rule 23 have been met. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Before a class may be certified, Federal Rule 23 requires that all of the factors listed in Rule 23(a) be satisfied and that the proposed action meet at least one of the categories of Rule 23(b). In addition, courts have added a requirement that the class be reasonably identifiable or ascertainable. *Dunnigan v. Metropolitan Life Ins. Co.,* 214 F.R.D. 125, 135 (S.D.N.Y. 2003). In determining whether to certify a class, the Court takes a liberal rather than a restrictive approach in determining whether the plaintiff satisfies these requirements. *See In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 133 (2d Cir.2001); *Caridad v. Metro–North Commuter RR,* 191 F.3d 283, 291 (2d Cir.1999); *In re NASDAQ Market–Makers Antitrust Litig.,* 169 F.R.D. 493, 504 (S.D.N.Y.1996).

In this case, the plaintiffs seek certification of the following class:

The Class consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the defendant's letterhead in substantially the same form as the letter sent to the plaintiff on or about June 22, 2006 sent within one year prior to the date of the within complaint; (b) the collection letter was sent to a consumer seeking payment of a consumer debt; (c) the collection letter was not returned by the postal service as undelivered; and (d) that the letter contained violations of 15 U.S.C. §§ 1692e(5) and 1692e(10).

Federal Rule 23(a) provides that a class action may be maintained only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

In addition, the plaintiff seeks certification pursuant to Rule 23(b)(3). Rule 23(b)(3) allows for class certification where "the court finds that questions of law or fact common to the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for ... adjudicating a controversy."

■ The Second Circuit has determined that numerosity may be presumed with as few as 40 potential class members. *See Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995). Accordingly, with a proposed class of 117 members, the numerosity requirement is satisfied.

■ The commonality question requires a showing that common issues of fact or law exist and that they affect all class members. Individual circumstances of the class members may differ without precluding class certification if "common questions are at the core of the cause of action alleged." *Vengurlekar v. Silverline Tech., Ltd.,* 220 F.R.D. 222, 227 (S.D.N.Y.2003) (internal quotations and citations omitted).

■ Further, the typicality requirement, closely related to the commonality requirement, is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.... When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying the individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993) (citations omitted). The typicality requirement is meant to ensure that the class representative is not subject to a unique defense which could potentially become the focus of the litigation. *Vengurlekar*, 220 F.R.D. at 227.

Here, the plaintiff posits that the overarching question is whether the defendant's form letters violated the FDCPA and the only individual issues are (1) the identification of the consumers who received the letters; and (2) the defendant's net worth for the purposes of determining statutory damages in FDCPA class action cases. *See* 15 U.S.C. § 1692k (setting statutory damages in class action cases at $1000 for each named plaintiff plus an amount up to the lesser of $500,000 or one percent of the net worth of the debt collector to be divided among the unnamed class members). Further, the plaintiff contends that although the members of the proposed class received individual letters, the defendant operated in a purely systematic fashion, treating all 117 debtors in the exact same manner, without regard to whether suit against the individual person was actually likely. Finally, the plaintiff points out that liability here does not require proof that anyone was in fact misled.

■ The record establishes that the defendant transmitted substantially similar letters to all members of the proposed class, containing a clear threat of litigation, without authority to commence suit against any class member. As discussed above, under the requirements of the FDCPA and applying the least sophisticated consumer standard, the defendant's letters were deceptive. Accordingly, the Court finds that common questions of law and fact predominate in this action. *See Ayzelman v. Statewide Credit Services Corp.*, 238 F.R.D. 358, 363 (E.D.N.Y.2006) (finding common issues where the central legal question was whether the defendant sent substantially similar collection letters that contained language in violation of the FDCPA); *Reade–Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 32 (E.D.N.Y. 2006) (finding commonality where identical letters were transmitted by the defendant and noting "[w]here injuries derive from a unitary course of conduct by a single system, a district court is within its discretion in finding commonality" (internal quotations and citations omitted)). The Court finds that the commonality and typicality requirements are satisfied.

■ In addition, Fed.R.Civ.P. 23(a)(4) requires adequacy of representation, so that "the representative parties will fairly and adequately protect the interests of the class." In determining if a proposed representative will adequately serve the interests of the class, courts examine whether: "(1) plaintiff's interests are antagonistic to the interests of other members of the class; and (2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lifkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir.2000). Here, Leone has submitted an affidavit stating that she understands the responsibilities of a class representative and that she has knowledge of this action. (Leone Aff., April 11, 2008). There is no indication in the present record that Leone, the proposed class representative, maintains interests that are inconsistent with the claims of the proposed class. Further, proposed class counsel, Adam J. Fishbein, Esq. has ten years of experience litigating actions under the FDCPA and has been approved as class counsel on at least three prior occasions. (Fishbein Aff., April 17, 2008).

■ With respect to 23(b)(3), "[t]he predominance inquiry should focus on the liability issue [and] 'if the liability issue is common to the class, common questions are held to predominate over individual questions.'" *In re Nigeria Charter Flights Contract Litigation*, 233 F.R.D. 297, 304

(E.D.N.Y.2006) (quoting *Dura–Bilt Corp. v. Chase Manhattan Corp.,* 89 F.R.D. 87, 93 (S.D.N.Y.1981)). Here, the common questions regarding legality of the defendant's collection letters predominate over any individual questions.

■ Further, in considering the superiority requirement, the Court weighs four factors: (1) the interest of class members in individually controlling the prosecution of separate actions; (2) the extent and nature of any litigation pertaining to the same subject matter already commenced by members of the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *See Reade–Alvarez,* 237 F.R.D. at 33. Here, viewing the large number of class members combined with the relatively small value of each members claim (at most approximately $4000, if the statutory damage is set at $500,000), class members would have little interest in maintaining individual prosecutions. Further, concentration of the claims in this forum would provide greater efficiency than individual litigation and presents no unusual management challenges.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the defendant's motion for summary judgment is denied; and it is further

**ORDERED,** that the plaintiff's motion for summary judgment is granted on the ground that the defendant was without authority to carry out its threatened action and is denied on the ground that the defendant threatened to take an action that it did not intend to take; and it is further

**ORDERED,** that the plaintiffs motion to certify a class is granted and the Court certifies the following class under Fed.R.Civ.P. 23(b)(3):

> The Class consists of all persons whom Defendant's records reflect resided in the State of New York and who were sent a collection letter (a) bearing the defendant's letterhead in substantially the same form as the letter sent to the plaintiff on or

about June 22, 2006 sent within one year prior to the date of the within complaint; (b) the collection letter was sent to a consumer seeking payment of a consumer debt; (c) the collection letter was not returned by the postal service as undelivered; and (d) that the letter contained violations of 15 U.S.C. §§ 1692e(5) and 1692e(10).

The Court further approves Adam J. Fishbein as designated class counsel. It is further

**ORDERED,** that the plaintiff is directed to submit a proposed class action notice within ten days of the date of this order. Any objection to the notice shall be filed within five days thereafter.

**SO ORDERED.**